**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Steve Leon VILLIARD,**
**Defendant-Appellee.**

**No. 83SA97.**

Supreme Court of Colorado,
En Banc.

March 26, 1984.

Nolan L. Brown, Dist. Atty., James S. Russell, Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellee.

NEIGHBORS, Justice.

This is an interlocutory appeal filed by the People pursuant to C.A.R. 4.1. The People challenge the ruling of the district court suppressing evidence seized from the defendant's automobile following his ar-

rest. We reverse and remand for further proceedings.[1]

### I.

Steve Leon Villiard (defendant) is charged with possession of and conspiracy to distribute a schedule II controlled substance (cocaine)[2] by an information filed in the District Court for Jefferson County. The charges arose out of events which occurred on August 16, 1982, when the defendant was arrested and cocaine was found in his car when it was searched.

The record establishes the following relevant facts. On August 16, 1982, Agent Walter S. Jaakola of the Lakewood Department of Public Safety, who was assigned to the Drug Enforcement Administration Task Force in Denver, was contacted by Detectives John M. Costigan and Steven Barnhill of the Denver Police Department Narcotics Bureau. The Denver detectives requested Jaakola's assistance. Costigan told Jaakola that an informant had reported to him that Steve Villiard was going to pick up a quarter pound of cocaine from Villiard's source whom the informant identified as "Larry." Costigan also told Jaakola that the defendant intended to leave his residence and go to the source's house to purchase the cocaine between 9:30 p.m. and 10:00 p.m. on that day, and would be driving a brown Dodge Charger with "temporary plates."

According to Costigan, he was contacted by the first-time, unnamed, confidential informant on August 16, 1982. The informant told Costigan that he had talked with the defendant on that day. The informant stated that the defendant told him "he was short of a quantity of cocaine at his house" and he "would have to go to his connection's house to get some additional co-

caine." The informant told Costigan that the defendant was in the business of selling cocaine, that the informant had purchased the drug from the defendant "for about the last year," that the transactions took place at the defendant's residence located at 9691 West Stanford,[3] and that he could purchase cocaine from the defendant when he called him. The informant reported to Costigan that he had met "Larry" (the defendant's source) previously and "had seen him within the last three to four weeks in possession of two pounds of cocaine." The informant stated that the defendant would drive alone in his car from his house on West Stanford to Larry's residence which was located nearby, purchase one-quarter pound of cocaine, and return to his home where he would distribute the drug. Costigan learned from the informant that, in the past, the informant had seen the defendant armed with a gun and also a "tube" which he described as a "shark gun" that fired a single shell. The informant also reported that the defendant diluted the cocaine prior to distribution to his customers, that the defendant told the informant his source "had a fresh supply in," and that he could purchase large quantities.

The police officers had no other information concerning the defendant or his alleged source. The informant provided Costigan with the following description of the person whom he knew as Steve Villiard: "a white male, 35 to 38 years of age, approximately 6 feet 1 inch in height, stocky build, brown hair with a receding hairline, and a full mustache which is grown down to his chin."

Based on this information, the officers began surveillance of the defendant's residence on the afternoon of August 16, 1982, at 3:00 p.m. to 3:30 p.m. During the sur-

---

**1.** The trial court also suppressed evidence seized pursuant to a search warrant from the residence of the co-defendant, Larry Robert Biesemeier. The People have not appealed that suppression ruling.

**2.** Section 12–22–310, C.R.S.1973 (1978 Repl.Vol. 5 & 1982 Supp.), and section 18–18–105(2)(a), C.R.S.1973 (1978 Repl.Vol. 8 & 1982 Supp.).

**3.** At the suppression hearing, the defendant testified that he had lived at the West Stanford address for only a month and a half as of August 16, 1982, the date he was arrested.

veillance, the officers saw eight to ten people come and go from the house. At approximately 9:45 p.m., a person, who matched the description of Steve Villiard provided by the informant, came out of the house and got into a brown Dodge Charger which had been parked in front of the residence. The officers followed the car to a house located at 4391 South Estes Street. The distance between the defendant's residence and the Estes Street location is two miles, and the drive took approximately five minutes.[4] The defendant parked his car on Estes Street, got out and went into the house where he remained for approximately an hour to an hour and a half. The officers had no information concerning anyone who lived in the house. When he left the house, the defendant was carrying a dark colored gym bag in his hand. He got into the Charger automobile and proceeded west on West Quincy towards Kipling. He then turned south on Kipling toward West Stanford. At Kipling and West Stanford, which is approximately one block from his residence, the officers stopped the defendant's vehicle. The defendant tried to drive by the officers, but when told to stop, he did so. The defendant was immediately removed from the car, arrested, handcuffed, and made to lie on the ground. Detective Barnhill then seized the gym bag from the car. The bag contained a ziplock plastic bag containing about four ounces of cocaine, empty baggies, and a substance known as anacital, which is used to dilute cocaine before it is sold.

At the conclusion of the hearing on the motion to suppress evidence, the trial court found that the police officers did not have probable cause to arrest the defendant as he was driving down the street and that the search of the gym bag in his vehicle was unlawful in violation of the United States and Colorado Constitutions. The ruling on the lack of probable cause was premised on the court's determination that the People failed to establish the reliability of the first-time informant. There was a

conflict in the testimony concerning the facts surrounding the search of the gym bag found on the front seat of the defendant's car. The officers testified that the bag was open and that they saw the plastic bag containing cocaine in plain view. The defendant testified that the cocaine was in a locked bank bag inside the gym bag which had been zippered shut. The trial court resolved the issue against the People, finding that the officers "had to dig into the bag to find the powdery substance and that they did this all on some information from some unreliable informant who said that Mr. Villiard was going to buy a large quantity of drugs." Accordingly, the court suppressed the evidence seized from the automobile driven by the defendant. The district attorney then filed this interlocutory appeal.

## II.

■ Based on the facts and circumstances enumerated in Section I, we have little difficulty in concluding that the officers were fully justified in stopping the defendant. *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971); *People v. Tate*, 657 P.2d 955 (Colo.1983). Under the *Stone-Tate* doctrine, police officers may subject a suspect to a temporary detention, such as an investigatory stop or a limited search of the person, on less than a probable cause standard if three conditions exist: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

■ The officers had an articulable and specific basis for suspecting that the defendant was involved in criminal activity. An untested informant had given them the name and physical description of a person who sold cocaine to the informant. The

---

**4.** The Estes Street house was later identified as the residence of the co-defendant Larry Biesemeier when the officers went to that location "to

secure the premises" after they arrested the defendant and seized the baggie containing cocaine.

informant also related other facts and a projected sequence of events which would occur on August 16, 1982. A person matching the description provided by the informant engaged in the conduct which the informant had predicted. The officers had also corroborated some of the facts provided to them by the informant. Therefore, the evidence meets the first criterion of the *Stone-Tate* standard. As incidents of the *Stone-Tate* stop, the officers could have detained the defendant until they learned his identity and checked the ownership and registration of the car he was driving.[5] They were justified in conducting a pat-down search of the defendant to determine whether he was armed and in handcuffing him, based on the statements of the informant that he had seen Steve Villiard in possession of a weapon at an earlier time.[6] *People v. Weeams*, 665 P.2d 619 (Colo.1983); *People v. Lewis*, 659 P.2d 676 (Colo.1983). In addition, the officers could have detained the defendant briefly until they learned whether a person named "Larry" lived at the residence from which the defendant had just left. Here, however, the officers exceeded the outer limits of *Stone-Tate* when they immediately arrested and handcuffed the defendant and searched his car. It is clear from the evidence that the officers' purpose in stopping the car was to arrest the driver and to seize and search the gym bag which they had seen in his possession. Accordingly, both the purpose and the character of the intrusion were not authorized by the *Stone-Tate* standard. Since the detention and the search went beyond the ambit of an investigatory stop, both must be supported by probable cause. *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983).

### III.

■ A warrantless arrest must be supported by probable cause. *E.g., People v.*

5. Agent Jaakola testified at the suppression hearing that the Dodge automobile did not belong to the defendant.

6. No weapons were found on the defendant at the time of his arrest.

*Schreyer*, 640 P.2d 1147 (Colo.1982); *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974). An officer has probable cause when the facts and circumstances within his knowledge—or upon which he has reasonably trustworthy information—at the moment of arrest are sufficient to warrant a reasonably cautious officer in believing that the person to be arrested has committed or is committing an offense. *People v. Turner*, 660 P.2d 1284 (Colo.1983); *People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971).

■ A warrantless search is presumed to violate the constitutional provisions forbidding unreasonable searches.[7] *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Turner*, 660 P.2d at 1287. In the case of a warrantless search, the burden of proof is always upon the People to establish that (1) probable cause exists, and (2) the search falls within the limits of a well-recognized exception to the warrant requirement. *Turner*, 660 P.2d at 1287; *People v. Williams*, 200 Colo. 187, 613 P.2d 879 (1980). The three exceptions to the warrant requirement possibly relevant to this case are search incident to a lawful arrest (*United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Tate*, 657 P.2d 955; *People v. Rueda*, 649 P.2d 1106 (Colo. 1982)), the automobile exception (*Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *People v. Velasquez*, 641 P.2d 943 (Colo.1982), *cert. denied*, — U.S. —, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982)), and plain view (*Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

### A.

The first step in resolving the probable cause issue requires a determination as to whether the facts provided by the unnamed, first-time informant were reliable.

7. U.S. Const. amend. IV; Colo. Const. art. II, § 7.

We note that the trial court employed the two-pronged test formulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in analyzing the evidence presented.[8]

The first prong of the *Aguilar-Spinelli* test is commonly referred to as the "basis of knowledge" requirement. The information related to Costigan by the unnamed informant was derived from the informant's alleged conversations with the defendant and his personal observations. This evidence adequately established the informant's basis of knowledge and satisfies the first prong of the test. *People v. Conwell*, 649 P.2d 1099, 1101 n. 1 (Colo. 1982); *People v. Dailey*, 639 P.2d 1068 (Colo.1982); *People v. Cook*, 665 P.2d 640 (Colo.App.1983).

The second prong of the *Aguilar-Spinelli* test—the veracity requirement—is similarly satisfied in this case. The admission by the unnamed, first-time informant that he had purchased cocaine from a person he knew as Steve Villiard is a significant factor in establishing his reliability. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *People v. Stoppel*, 637 P.2d 384 (Colo.1981). In addition, the detailed facts provided by the confidential informant combined with the corroboration of some of the information by police surveillance, albeit non-incriminating activity as opposed to criminal conduct, is another factor to be weighed in determining the reliability of the informant. *See Conwell*, 649 P.2d 1099. We agree with the People's position that the informant's declaration against penal interest plus the corroboration of the detailed information he provided are sufficient to meet the ve-

racity prong of the test under the circumstances of this case. Accordingly, we conclude that the requirements of the *Aguilar-Spinelli* standard were established and thus, the informant was reliable.

### B.

In order to complete our analysis of the probable cause issue, we must next determine whether the officers had reasonable grounds to arrest the defendant for possession of cocaine and to search his vehicle. The law is well established in Colorado that probable cause to believe that a crime has been committed must exist at the time the defendant is arrested. *People v. Quintero*, 657 P.2d 948 (Colo.1983), *cert. dismissed sub nom. Colorado v. Quintero*, — U.S. —, 104 S.Ct. 543, 78 L.Ed.2d 719 (1983); *People v. Schreyer*, 640 P.2d 1147 (Colo.1982).

Because of the content and police verification of the informant's statements to Costigan, we are persuaded that the officers had reasonable grounds to believe that the remaining information—that the defendant would have cocaine with him—was likewise true. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). "Probable cause" and "reasonable grounds" are equivalent terms and do not mean "mathematical probability ... in the resolution of suppression issues." *People v. Hearty*, 644 P.2d 302, 310 (Colo.1982). We conclude that the officers had probable cause to believe that the defendant had cocaine in his possession when they arrested him. The search of the gym bag did not violate constitutional standards because the police officers had probable cause to arrest the defendant and reasonable grounds to believe that the vehicle con-

---

**8.** The trial court made its ruling before the United States Supreme Court announced its decision in *Illinois v. Gates*, — U.S. —, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Court apparently abandoned the two-pronged *Aguilar-Spinelli* test in favor of a totality of circumstances standard in passing upon the sufficiency of affidavits submitted in support of search warrants. The People's only brief was filed on May 31, 1983. *Gates* was announced on June 8, 1983. In his answer brief the defendant urges us to retain the traditional two-pronged test and reject *Gates* on state constitutional grounds. Because we resolve this case on the basis of the more rigid *Aguilar-Spinelli* standard, it is unnecessary to address *Gates*. Accordingly, we express no opinion as to the effect of *Gates* upon the result reached in this case. *See People v. McFall*, 672 P.2d 534, 538 n. 5 (Colo.1983).

tained evidence of a crime. *People v. Barton*, 673 P.2d 1005 (Colo.1984).

The trial court's suppression ruling is reversed and the case is remanded for further proceedings.