**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**John A. PANNEBAKER, Defendant-Appellee.**

**No. 85SA222.**

Supreme Court of Colorado, En Banc.

March 3, 1986.

Alexander M. Hunter, Dist. Atty., John M. Haried, Deputy Dist. Atty., Boulder, Eric R. Perryman, Sp. Deputy Dist. Atty., Denver, for plaintiff-appellant.

Carl F. Manthei, P.C., Boulder, for defendant-appellee.

VOLLACK, Justice.

The People appeal the district court's suppression of evidence seized pursuant to warrants issued upon affidavits. The People claim the district court erred in ruling that there was insufficient probable cause contained within the affidavits for the issuance of the search warrants. Alternatively, the People argue that if the district court was correct as to its ruling that there was insufficient probable cause, the court erred in ruling that the "good faith" exception to the exclusionary rule was inapplicable to save the defective affidavits in this case. We reverse the suppression of the evidence.

## I.

On November 19, 1984, based on the affidavit of Denver Detective Larry Subia, Denver County Judge Samuel M. Kirbens issued two warrants to search two residences owned by John Pannebaker. The warrants were based on information Detectives Subia and Martinez received from a first-time, confidential informant. The informant related that John Pannebaker was growing marihuana for illegal sale from two residences in Boulder County. The informant was familiar with the apparent use and sales methods of marihuana because the informant had used marihuana in the past. The informant stated that Panne-baker lived in one of the residences and rented out the other. Further, the informant was inside both residences within the "recent past" and observed marihuana plants growing in what Pannebaker termed the "genesis root system." According to the informant, the growing rooms in the houses were constantly lit with special sunlights. The informant also related that the marihuana growing room was on the second level of the residence which Pannebaker rented and in the attic space of the residence in which Pannebaker lived. At the rented residence, the informant stated that all the windows in the second level growing room were covered with a dark window covering. This was to keep the room warm and to prevent anybody from looking inside. The informant provided a full description of both houses and noted that the residence in which Pannebaker lived did not have an address on the outside of the house. The informant then provided detailed guidance on how to reach that residence.

On November 15, 1984, Detectives Subia and Martinez and the informant drove to the residences to verify the information. Both houses matched the description provided by the informant. The detectives observed the windows on the second level of the rented residence to be covered with black plastic and reflector covering. The detectives noticed that one of several U.S. postal mail boxes contained the name John Pannebaker. Detective Subia looked in the mailbox and found unopened mail addressed to John A. Pannebaker.

At the residence in which Pannebaker was residing, the detectives observed a small, silver car which was parked in a detached carport. Both the car and house descriptions were as the informant had earlier related.

Detectives Martinez and Subia, through further investigation, found that John A. Pannebaker had a N.C.I.C. operator's license number listing under John Andrew Pannebaker at the address where Pannebaker was residing. The license stated that Pannebaker was a male, six-feet tall,

155 pounds, blond hair, blue eyes. This description matched the one provided by the informant. The officers further discovered that Pannebaker had a criminal history stemming from arrests for possession and distribution of marihuana in 1972 and 1974.

Boulder authorities did not execute the search warrants immediately upon receipt. The Boulder district attorney questioned the time period of "recent past." As a result of this concern, Boulder Detective Hall prepared a second affidavit. In it, he stated that he contacted Detective Subia, who relayed that, without jeopardizing the safety of the confidential informant, information was available to show that the informant had been in the house within the last thirty days.

Detective Hall then presented his affidavit, incorporating the Denver warrants and Detective Subia's affidavit, to Boulder County Judge Torke on November 21, 1984. The Hall affidavit contained additional information of further independent corroborative observations and research.

Detective Carolyn Roberts of the Boulder County Sheriff's Department checked the Boulder County Assessor's records for residences owned by John A. Pannebaker. The records on file showed John Pannebaker to be the owner of both residences in question.

Detective Hall also included in his affidavit information relayed by the informant through Detective Subia that a large portion of the first house, as well as the attached portion of the second house, was being utilized for this growing process. Further, the marihuana being grown was not for personal use, but rather for sale in the Denver and Boulder metropolitan area. The Hall affidavit also stated that the confidential informant provided Detective Subia with a great deal of additional information, which would not be disclosed in the affidavit for fear of identifying the confidential informant.

Based on Detective Hall's affidavit, the Denver warrants, and Detective Subia's affidavit, Judge Torke issued warrants to search both houses of the defendant. The officers immediately executed the warrants and found a marihuana growing operation inside both residences. At the house that Pannebaker was alleged to have rented, officers discovered 88 mature marihuana plants, $5,000 in cash, grow lights, fertilizer, pumps, plastic bags, a scale, a file cabinet "literally filled" with literature describing indoor marihuana growing methods, and bags of marihuana. At the residence of John Pannebaker, officers found 260 marihuana plants and seedlings "fed from ... automatically controlled timers that controlled ventilation, light, and the nutrition flow." Officers also found a dismantled "genesis root system."

The district court suppressed all evidence seized from both of the defendant's houses. It concluded that the assertion in Detective Subia's affidavit as to "recent past" was too vague to permit a magistrate to conclude that there was probable cause to believe the house contained marihuana. The court further concluded that the sentence in the Hall affidavit that the confidential informant "had been in the residence of Mr. Pannebaker within the last month, and saw the marihuana growning [sic]," failed to establish the affiant's basis of knowledge for that assertion. The court held that both affidavits failed the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as well as the "totality of the circumstances" analysis mandated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Moreover, the court concluded that the affidavits and search warrants did not meet the "good faith" exception to the exclusionary rule stated in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), or in *People v. Deitchman,* 695 P.2d 1146 (Colo.1985). The basis of the court's conclusion was that, while the officers properly chose to protect the informant, the method that they chose was to limit what they told the magistrate. Such an intentional omission, in the court's

view, removed the case from the good faith exception. Because we hold that the Hall affidavit, coupled with the previously issued warrants based upon the Subia affidavit, was sufficient for a finding of probable cause by Judge Torke to issue warrants to search both houses, we reverse the district court ruling on the issue of probable cause, and we, therefore, make no conclusion as to the applicability of the good faith exceptions.

## II.

■ The issue before us is whether the Hall affidavit, which incorporated the Subia affidavit, contained sufficient information within its four corners to establish probable cause for the issuance of a warrant under the fourth amendment to the United States Constitution and under Art. II, Sec. 7, of the Colorado Constitution. Both constitutions provide that no warrant shall issue without probable cause. *See also* section 16–3–303, 8 C.R.S. (1978); Crim.P. 41. The rigid "two-pronged test" under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 783 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant's tip establishes probable cause for issuance of a warrant was abandoned in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the "totality of the circumstances" approach that traditionally has informed probable-cause determinations was substituted in its place. The elements under the "two-pronged test" considering the informant's "veracity," "reliability," and "basis of knowledge," according to *Gates,* should be understood simply as closely intertwined issues that may usually illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. Accordingly, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Further, the *Gates* court reaffirmed that "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for … conclud[ing]' that a search would uncover evidence of wrong doing, the Fourth Amendment requires no more." *Id.,* at 236–37, 103 S.Ct. at 2331, *citing, Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); and *see United States v. Harris,* 403 U.S. 573, 577–83, 91 S.Ct. 2075, 2078–82, 29 L.Ed.2d 723 (1971). We adopt the "totality of the circumstances" test of *Gates* for the purpose of Art. II, Sec. 7.

■ The "totality of the circumstances" analysis outlined in *Gates* places particular importance on the value of corroboration of the details of an informant's tip by independent police work. *Id.,* 462 U.S. at 241–46, 103 S.Ct. at 2333–36. Here, Detectives Subia, Martinez, Hall, Hendry, and Roberts all conducted independent investigative work to add further credibility to the confidential informant's information. Such investigations confirmed the informant's descriptions and geographic settings of both houses, the type of car Pannebaker drove, the physical description of Pannebaker himself, and the ownership of both houses by Pannebaker. Further police investigation showed that Pannebaker had a previous criminal record with regard to marihuana.

Of particular import to the time concern expressed by the trial court was the black plastic that the informant had stated would be covering the second floor windows of the rented residence in order to create a climate control for the plants and to prevent others from looking into the windows. The existence of the black plastic is strong corroboration that the information received from the confidential informant was not stale. First, the black plastic corroborates the confidential informant's statement that it was used for climate control and to prevent others from looking into the windows.

Second, since the plastic was alleged to be used specifically for the growing of marihuana, the existence of the plastic logically supported a common-sense conclusion that the harvesting of marihuana was an ongoing one.

Moreover, the trial court's concern as to the source of Detective Hall's information that the confidential informant had been inside the houses "within the last month" is misplaced. In *People v. Henry*, 631 P.2d 1122, 1128 (Colo.1981), we observed that information provided by fellow officers was reliable. Similarly, the information here was not rendered unreliable merely because the informant relayed the information through Detective Subia to Detective Hall rather than directly to Detective Hall.

The combination of the independent corroboration by the detectives along with the detailed statements by the confidential informant, when viewed under the practical and common-sense analysis mandated by *Gates*, leads us to conclude that there was probable cause for a detached and neutral magistrate to issue search warrants for both houses. Because we hold there was probable cause, we need not reach the People's alternative argument that there was a "good faith" exception to the exclusionary rule under the cases of *Leon* and *Deitchman*.

Accordingly, we reverse the trial court and remand for further proceedings.

LOHR, Justice, specially concurring.

LOHR, Justice, specially concurring:

I agree with the majority's determination that the affidavits of Detectives Hall and Subia, as analyzed under the totality of the circumstances approach set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), established probable cause for the issuance of search warrants by Judge Torke. I write separately, however, to emphasize that the mode of analysis adopted in *Illinois v. Gates* recognizes the continuing significance of the probable cause considerations established in *Aguilar*

*v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 783 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

For over a decade, this court has required that an affidavit for a search warrant based on statements of an informant meet the two-pronged test for sufficiency established by the United States Supreme Court's decisions in *Aguilar* and *Spinelli*. E.g., *People v. Conwell*, 649 P.2d 1099 (Colo.1982); *People v. MacDonald*, 173 Colo. 470, 480 P.2d 555 (1971). The *Aguilar-Spinelli* test requires that such an affidavit must satisfy the following criteria:

> First, it must contain facts from which the judge who is requested to issue the warrant can determine independently whether the informant has an adequate basis for his allegations that evidence of crime will be found at the place sought to be searched. Second, it must set forth sufficient information to enable the judge to determine whether the informant is credible or some other basis exists to believe that the information is reliable.

*People v. Dailey*, 639 P.2d 1068, 1072 (Colo. 1982).

As the majority points out, this two-pronged test was "abandoned" by the United States Supreme Court in *Illinois v. Gates* and was replaced by a totality of the circumstances approach that requires a magistrate "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

The majority adopts the test set forth in *Gates* for the purpose of determining probable cause under article II, section 7, of the Colorado Constitution, majority opinion at 907, thus deciding an issue that we had specifically reserved in our past decisions.

*See People v. Stark,* 691 P.2d 334, 338 n. 3 (Colo.1984) (case resolved on basis of *Aguilar-Spinelli,* making it unnecessary to address *Gates*); *People v. Villiard,* 679 P.2d 593, 598 n. 8 (Colo.1984) (application of *Aguilar-Spinelli* rendered unnecessary any consideration of *Gates* test on state constitutional grounds); *People v. McFall,* 672 P.2d 534, 538 n. 5 (Colo.1983) (relied on *Aguilar-Spinelli* because defendant did not have opportunity to argue *Gates* on appeal). Although I do not disagree with the majority's decision to embrace *Gates* as part of Colorado's constitutional doctrine, I emphasize that the considerations addressed in *Aguilar-Spinelli* retain viability and importance for fourth amendment probable cause analysis under *Gates,* and accordingly, for the purpose of determining probable cause under article II, section 7, of our state constitution.

In *Gates,* the United States Supreme Court was concerned that "the 'two-pronged test' has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." 462 U.S. at 234–35, 103 S.Ct. at 2330 (footnote omitted). It thus decided against requiring that the two elements of the test—the informant's veracity or reliability, and his basis of knowledge—be understood as entirely separate and independent requirements to be rigidly exacted in each case. *Id.* at 230, 103 S.Ct. at 2338. The Court noted, however, that the two elements are relevant considerations, *id.* at 233, 103 S.Ct. at 2338, that "may usefully illuminate," *id.* at 230, 103 S.Ct. at 2338, a probable cause inquiry under a totality of the circumstances analysis. With the understanding that the considerations of the *Aguilar-Spinelli* test are being "abandoned" only as strict requirements and not as important factors that should receive attention in any examination of the sufficiency of an affidavit to establish probable cause based on an informant's statements, I concur in the opinion of the majority.