**PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Devannie M. LUBBEN and Ramon Munoz, Defendants-Appellees.**

**No. 86SA305.**

Supreme Court of Colorado, En Banc.

June 29, 1987.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Denver, for defendant-appellee Devannie M. Lubben.

No Appearance for defendant-appellee Ramon Munoz.

ROVIRA, Justice.

Pursuant to C.A.R. 4.1, the People appeal an order suppressing evidence obtained pursuant to a search warrant. The trial court concluded that the search warrant was invalid because the underlying affidavit was insufficient to demonstrate probable cause for the search. We reverse and remand for further proceedings.

I.

The issue presented in this case is whether the affidavit supplied to the magistrate contained sufficient information to justify issuing a search warrant. The affidavit, the substance of which is appended to this opinion, was dated January 2, 1986, and requested a warrant to immediately search 2590 W. Yale Avenue and 2720 South Bryant Street, in Denver, Colorado, and Devannie Lubben and Ramon Munoz (defendants), for controlled substances and related paraphernalia.

The affidavit was signed by Detective Marco Vasquez, who stated therein that he had been with the Denver Police Department for ten years and in the narcotics division for five.

The affidavit stated that in November 1985, Vasquez was informed by a first-time confidential informant that the defendants, whom the informant described, were engaged in the sale of methamphetamines from the Bryant and Yale addresses. The informant stated that the supplier was a man named Richard Marsh; the informant then took Vasquez to an apartment on Quincy Avenue, and indicated that it was Marsh's residence.

The affidavit then stated that Vasquez had checked police records and determined that Munoz had been "contacted" at the Marsh residence by the police on December 7, 1985. Vasquez then talked to the officer who made the "contact" at the Marsh resi-

dence, and the officer told him that drug paraphernalia was in plain view. The records also revealed that defendants were arrested at the Yale Avenue address on April 24, 1985, and gave that address as their home address. Information received from fellow officer Michael Gassman also revealed that on April 24, currency, a handgun, and methamphetamines were recovered during a search of the Yale Avenue address. The affidavit also stated that when given traffic citations in July 1985, defendants again gave the Yale Avenue address as their home address.

The affidavit further noted that, during the preceding month, Vasquez and Gassman had conducted "sporadic surveillance" of both the Bryant Street and Yale Avenue addresses, and had observed unusually heavy foot traffic to, from, and between those addresses and that this is a common practice in the sale of drugs at the street level.

In its penultimate paragraph, the affidavit stated that "[w]ithin 72 hours of 1/6/86, this confidential informant was at the [Yale] address ... and observed a quantity of methamphetamine. This informant is familiar with the appearance of methamphetamine as the informant has used methamphetamine in the past."

Vasquez presented his affidavit to a Denver County Court judge on January 2, 1986. Based on his affidavit, a warrant was issued to search 2590 W. Yale Avenue, Denver, Colorado, and the defendants. The warrant did not allow a search of the Bryant Street address. The search was conducted the same day. Physical evidence was seized only from the premises, and defendants were charged with unlawful distribution, manufacturing, dispensing, sale, and possession of a controlled substance, section 18–18–105, 8B C.R.S. (1986).

The defendants moved to suppress the seized evidence on the grounds that the affidavit was insufficient to support a search warrant and therefore the search was unconstitutional. The only evidence presented to the trial court in addition to the affidavit was the testimony of Vasquez. He testified that the affidavit was written and signed on January 2, 1986, and the date "1/6/86" in the penultimate paragraph of the affidavit was a typographical error and should have been "1/2/86."

The trial court ruled that the affidavit did not contain sufficient information to establish probable cause for the issuance of a search warrant because there was inadequate information as to how, when, and where the informant observed defendants being "engaged in" the methamphetamine trade. Further, the affidavit lacked sufficient corroborating detail; the incorrect date regarding the informant's observations of methamphetamines at the Yale address could not be corrected as a typographical error because the issuing judge could only rely on the four corners of the affidavit and would have no way of knowing it was a typographical error; and there was lack of detail as to the times of the "sporadic surveillance" conducted by Vasquez and Gassman. Accordingly, the trial court ordered the evidence suppressed.

The People filed this interlocutory appeal, arguing that the affidavit is sufficient to justify the issuance of a search warrant for the premises. Alternatively, the People argue that, even if the magistrate erred in issuing the warrant, the officers relied on it in good faith and therefore the evidence should be admitted pursuant to section 16–3–308, 8A C.R.S. (1986).

## II.

In determining whether there is probable cause to issue a search warrant, the court must examine the "totality of the circumstances" to determine if the affidavit reveals "sufficient facts for a person of reasonable caution to believe that contraband" will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Rayford*, 725 P.2d 1142, 1148 (Colo. 1986); *People v. Hart*, 718 P.2d 538 (Colo. 1986). Probable cause depends on probabilities, not certainties. *Rayford; People v. Hill*, 690 P.2d 856 (Colo.1986). The issuing magistrate should not interpret the affidavit in a hypertechnical fashion, but rather rely on common sense to determine

if there is a fair probability that contraband will be found. *Gates; Rayford; People v. Pannebaker*, 714 P.2d 904 (1986).

The purpose of the probable cause standard is both " 'to safeguard citizens from rash and unreasonable interferences with privacy' "and " 'to give fair leeway for enforcing the law for the community's protection.' " *Brineger v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Hearty*, 644 P.2d 302, 309 (Colo.1982).

In applying these principles, we do not deal with a finite set of all encompassing legal maxims, because "probable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329.

Initially, the court found the affidavit defective because the tip from the first-time informant was not supported with detail on how, when, and where the informant learned that defendants were moving methamphetamine between the two addresses listed. The court relied on *People v. Bauer*, 191 Colo. 331, 552 P.2d 512 (1976), for the proposition that these three factors were absolute prerequisites for reliance on a first-time informant's tip.

The court's reliance on *Bauer* is misplaced. *Bauer* was decided under the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required that the reliability, veracity, and basis of knowledge of the informant be established independently. The rigid "time, place, and manner" requirements were an outgrowth of that restrictive test requiring the court to independently determine the basis of knowledge. *Bauer*, 191 Colo. at 333, 552 P.2d at 513.

In *Pannebaker*, 714 P.2d at 906, we abandoned the *Aguilar-Spinelli* test and adopted the more flexible "totality of the circumstances" test first elucidated by the Supreme Court in *Gates*. Under the totality test, the reliability, veracity, and basis of knowledge are still important factors to be considered, *Pannebaker* (Lohr, J., specially concurring), but are intertwined, and a weakness in one factor may be compensated for by a strong showing in another. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Thus the trial court could properly recognize the informant's tip as being weaker than it would be if it were replete with detail, but nonetheless it should be factored into the totality of the circumstances test.

■ Further, we note that when "common sense" is used in reading the affidavit, the time, place, and manner are sufficiently demonstrated to show the tip was substantially reliable. The affidavit states that the informant first contacted Vasquez in November and told him that the defendants "were engaged" in drug sales. The use of the contemporaneous tense indicates that the informant spoke in the present tense in November; that is, in November the informant said defendants "are" engaged in the sale of methamphetamines. Thus, the general time frame is identified. *Cf. Bauer* (statement that the warrant was wanted immediately insufficient to imply information was recent).

The affidavit said the informant "observed" Lubben and Munoz moving drugs "between the two addresses." Common sense tells us that this reveals how [observation] and where [the addresses, or close enough to them to observe the activity].

The reliability of the informant is also heightened by his statement against penal interest that he recognized methamphetamine from prior use. *People v. Stark*, 691 P.2d 334 (Colo.1984) (informant's statement that he made his observations while engaged in criminal activity gives greater weight to his statements); *People v. Villiard*, 679 P.2d 593 (Colo.1984) (same).

The trial court also apparently failed to consider the affidavit as a whole. The court stated the methamphetamines found in the search of the Yale apartment on April 24, 1985, could not be tied to defendants because the affidavit did not state who was living in the apartment at the time. However, the affidavit clearly states that defendants were arrested at the Yale address on that same date, and that they listed it as their home address.

The trial court also concluded that since the statement concerning the sporadic surveillance by Vasquez and Gassman over the last month did not mention specific dates and times it could not be considered in determining if the information given was stale. Again, while specific dates are preferable and should be given if at all possible, the fact that they are absent is not fatal to the sufficiency of the affidavit. Rather, failure to give specific dates goes to the weight a statement is given.

In determining whether information is stale, the court must consider the type of crime the facts in the affidavit reveal. If it is a series of incidents, then a longer period of time is needed to render information stale. *People v. Schmidt,* 172 Colo. 285, 473 P.2d 698 (1970) (where affidavit reveals facts indicating a continuing series of drug transactions, it is reasonable to infer a continuation of illegal activity into the future, past the time when information of an isolated incident would be considered stale); *People v. Montoya,* 44 Colo.App. 234, 616 P.2d 156 (1980) (where facts indicate continuous illegal conduct, there is a higher probability that illegal activity will continue into the future); *cf. People v. Erthal,* 194 Colo. 147, 570 P.2d 534 (1977) (where affidavit reveals two-month old information relating to location of easily disposed of stolen tools from single, isolated theft, there is no probable cause to believe tools still at that location).

So, too, when the information indicates a continuing series of illegal activities, the need for precise times of surveillance is lessened. Here, other statements in the affidavit indicated that in April, November, and late December 1985, the defendants had been involved with methamphetamine at the stated addresses. That being the case, information based on "sporadic surveillance over the last month" [December] can be given more weight than it would deserve if the crime involved was a single, isolated incident.

Finally, the court was of the view that since the affidavit stated "within (72) hours of [a date four days in the future]," the magistrate should have ignored the subsequently described observations entirely. This ruling is not consistent with a common sense reading of the affidavit. It is common practice to use "within a certain number of hours" of the date of the affidavit; older dates are given by their actual day, rather than reference to the present. A common sense reading of the affidavit would simply omit the obviously incorrect "1/6/86." The affidavit would then read "within (72) hours ... this confidential informant was at the address...." The only sufficiently recent date to justify time being referred to as "within (72) hours of" it was the date of the affidavit. Thus the affidavit related very recent information.

Drawing all reasonable inferences from the facts stated in the affidavit, we conclude there was probable cause to issue the warrant. Accordingly, we do not address the People's "good faith" argument.

The order of the trial court suppressing the evidence seized pursuant to the search warrant is reversed, and the case is remanded for further proceedings.

ERICKSON, J., specially concurs.

## APPENDIX

Your affiant, Detective Marc Vasquez has been a Denver Police Officer for approximately ten years and has been assigned as a narcotics investigator for the past five years. In November, 1985, your affiant was contacted by a first time confidential informant. This informant related that a female named Devanie Lubben and a male named Ray or Ramon Munoz were engaged in the sale of methamphetamine, a schedule two controlled substance from two addresses. The first address was 2590 W Yale Avenue and the second address was 2720 S Bryant Street. The informant related that the source of supply for Lubben and Munoz was a male named Richard Marsh. The informant described Lubben as a white female approximately 5'4" to 5'5" medium build and light brown hair. The informant described Ramon as a hispanic male, approximately 5'9" and medium build and long black hair. The informant stated that it is a common practice of both

Lubben and Munoz to move the methamphetamine from the Yale avenue address to the Bryant street address and the informant has observed both Munoz and Lubben move drugs back and forth to both addresses. This informant took your affiant to the 8000 block of W Quincy avenue and pointed out a small apartment as belonging to Richard Marsh.

Your affiant checked the Denver Police department computer and learned that on 12/7/85 Denver police contacted Ramon Munoz (12/14/61) at 8100 W Quincy avenue. Your affiant has had contact with the uniform officer who made the contact and learned from officer Dave Wilson that Munoz was contacted at Marshes' address and that drug paraphernalia was in plain view at the Quincy address. Ramon Munoz (12/14/61) was arrested at 2590 W Yale avenue on 4/24/85 along with Devanie Lubben (2/26/63) and at that time listed their home address as 2590 W Yale avenue. At that time, a loaded handgun was recovered from the address. Douglas Lubben and the mother of Ramon Lubben [sic] are reportedly living at the 2720 S Bryant St address.

On 7/22/85, Devanie Lubben was issued a traffic citation and listed her home address as 2590 W. Yale avenue and on 7/22/85 Ramon Munoz was also issued a traffic citation and listed his home address as 2590 W Yale avenue.

Your affiant also received information from fellow detective Michael Gassman, also of the Denver Police department that Det Gassman had been involved in a drug investigation involving Denver and Lakewood Police and that Gassman had information that Devanie Lubben and Richard Marsh were dealing methamphetamine. Det Gassman had received information from Lakewood Police that on 4/24/85 a search was conducted of 2590 W Yale avenue and a quan[t]ity of methamphetamine, currency and a handgun was recovered.

For the past month, your affiant and Det Gassman conducted sporadic surv[ei]llance

at both addresses and has observed heavy foot traffic from both 2590 W Yale avenue and 2720 S Bryant street, including persons coming to and from 2590 W Yale to 2720 S Bryant street. This is a common practice in the sale of drugs at the street level.

Within (72) hours of 1/6/86, this confidential informant was at the address of 2590 W Yale avenue and observed a quan[t]ity of methamphetamine. This informant is famil[i]ar with the appearance of methamphetamine as the informant has used methamphetamine in the past.

Based on this information, your affiant requests an immediate entry search warrant be issued for the addresses of 2590 W Yale avenue and 2720 S Bryant Street, for the recovery of evidence and for the safety of officers executing the warrant.

ERICKSON, Justice specially concurring:

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court held that when a search warrant is based on a disclosure of criminal activity by a confidential informant, the supporting affidavit must set forth facts permitting the judicial officer to determine (1) whether the informant had a basis for his allegation that criminal activity has occurred or will occur at a particular place, and (2) whether the informant is credible and his information reliable. *See* W. LaFave & J. Israel, *Criminal Procedure* § 33 at 114–15 (1985). The rigid requirements of *Aguilar* and *Spinelli* have been modified by the Supreme Court in favor of a more flexible case-by-case analysis of whether "the totality of circumstances" supports a finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *People v. Pannebaker*, 714 P.2d 904 (Colo.1986), we followed *Illinois v. Gates* and applied the "totality of the circumstances" test.[1] However, the informant's "veracity" and "basis

---

**1.** *Pannebaker* presented a far stronger case to support probable cause. In *Pannebaker,* the police officers independently verified much of the informant's information, and police surveillance established that the informant's information was not stale.

of knowledge" are still important factors in making the "practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. *See also People v. Pannebaker,* 714 P.2d at 909 (Lohr, J., concurring).

The majority overly emphasizes the importance and significance of basing the determination of probable cause in this case upon the informant's statements to a police officer two months before the issuance of the warrant that the defendants were "engaged" in selling methamphetamine and were moving controlled substances between the Bryant Street and Yale Avenue residences. In my view, these statements do not support the issuance of the search warrant. The affidavit provides no basis upon which a judicial officer could determine the informant's "basis of knowledge" for asserting that the defendants were engaged in the sale of methamphetamine in November 1985. The informant's statements, even under the "totality of the circumstances" test, lend little, if any, support to a probable cause determination.

However, I concur because other allegations contained in the affidavit support the issuance of the warrant. In the seventy-two hour period before the affiant applied for the warrant,[2] the informant observed what he believed from personal experience to be a quantity of methamphetamine at the Yale Avenue residence. The informant's information was corroborated by the affiant's observations for a month preceding the warrant's issuance that there was a pattern of foot traffic at the Yale Avenue residence consistent with the sale of controlled substances from that location. The informant's personal observation of methamphetamine at the place to be searched demonstrates the informant's basis of knowledge, and his declaration against penal interest enhances his credibil-

ity and the veracity of his allegations. *See People v. Stark,* 691 P.2d 334, 337–38 (Colo.1984) (an informant's personal observations establish the basis of his knowledge, and his declarations against penal interest establish his credibility); *People v. Villiard,* 679 P.2d 593 (Colo.1984) (a first-time informant's reliability is substantiated by his declarations against penal interest and by police surveillance which corroborated some of his information). Although the affidavit in this case was not ideal, or a model to be followed, the information set forth in the affidavit established probable cause to believe that contraband would be found at the Yale Avenue location.[3]

---

**2.** I agree with the majority's conclusion that the date "1/6/86," as set forth in the affidavit, must be read as "1/2/86."

**3.** This is a close case that demonstrates the necessity for determining search and seizure issues on the particular facts of each case. *See People v. Bauer,* 191 Colo. 331, 552 P.2d 512 (1976).