## No. 24958.

The People of the State of Colorado v.
Kent Westfall MacDonald.
(480 P.2d 555)

Decided February 8, 1971.

A. L. HERRMANN, District Attorney, First Judicial District, CHARLES T. HOPPIN, Deputy, for plaintiff-appellee.

JOHN W. YOUNG, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THIS Interlocutory Appeal is brought by MacDonald, hereinafter referred to as defendant, from adverse rulings in the trial court on his motion to suppress evidence he alleges was illegally obtained.

The warrant, search, and arrest in this case revolve around the same set of events with which we were dealing in *People v. Lujan,* 173 Colo. 77, 475 P.2d 700, (hereinafter cited as *Lujan*). On the night of June 7, 1970, Agents Johnson and Grubb were executing a search warrant at 90 South Wadsworth, Jefferson County, Colorado. Defendant arrived at the scene after large quantities of drugs had already been found. He came to the

door, was allowed to enter, and was immediately searched. It is the drugs found on his person as a result of this arrest and search that defendant seeks to have us suppress.

The first issue raised is the same as was raised in *Lujan*, namely, that the officers lacked probable cause for the arrest and search. The second issue raised by defendant was not raised in *Lujan*. In this case defendant challenges the validity of the original warrant authorizing the search at 90 South Wadsworth, claiming that as a result of the alleged illegality his arrest was tainted. Defendant argues that the affidavit of Agent Grubb fails to meet the standards required to establish probable cause for the issuance of a search warrant. A third issue for determination here is raised by the People. At the hearing on the motion to suppress, the defendant was allowed to cross-examine Grubb as to the information he swore to in the affidavit despite an objection by the People that the inquiry must be limited to the "four corners" of the affidavit. We find no error regarding any of these allegations, and we affirm the rulings of the trial court.

I.

■ The only factual distinctions between this case and *Lujan* are that (1) the defendant in this case arrived before Lujan did, but after the agents had already found large quantities of drugs, and (2) in this case the defendant approached the house on his own rather than having the agents go out to the car and arrest him. We are of the opinion that these distinctions make no difference. We adhere to our holding in *Lujan*, and we find no error here. *Accord, People v. Martinez*, 173 Colo. 76, 476 P.2d 44; *People v. Collman*, 172 Colo. 238, 471 P.2d 421.

II.

■ We come then to the question regarding the validity of the search warrant itself, a matter which was not raised in *Lujan*. The standards of probable cause for

issuing a warrant based on the information given to the affiant-police officer by an informant are cogently set forth in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, (hereinafter cited as *Spinelli*) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (hereinafter cited as *Aguilar*). We feel this affidavit adequately meets these standards. The only difficulty in the adequacy of this affidavit is that this was the first time the police had used this informer.

*Aguilar* sets out a two-pronged test. The first prong requires allegations of fact upon which the issuing magistrate could exercise his judgment in order to determine whether there were reasonable grounds to believe illegal activity was being carried on in the place sought to be searched. *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996. This affidavit avers that this informer saw the people at this address actually using drugs. This information is certainly sufficient to satisfy the first prong.

The second prong of *Aguilar* is more fully explained in *Spinelli*. The affiant-officer must set forth for the magistrate's independent determination why the informant is "credible" or why this information is "reliable." A commonplace method for satisfying the requirement of "credibility" is to allege that this informer's information has been proved valid in the past. We agree with the People that if this were the only method available, the police could never use an informer the first time. Under what circumstances, then, is it constitutionally permissible to issue a warrant where the information is obtained from a first time informer? *Spinelli* draws at least two possibilities. The first is an analogy to *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, where the information possessed by the informer was in such detail that it indicated that the only way he could have obtained it was through a reliable method. *Spinelli* at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644, & n.5; *People v. Martinez*, 173 Colo. 17, 475 P.2d 340.

The second method available to satisfy the "reliable"

information test is by use of independent, collateral corroboration in the affidavit. The standard to be applied when using corroboration is that the informer's tip plus the corroboration must be at least as persuasive as information which would pass *Aguilar's* requirements when standing alone. *Spinelli* at 415-16, 89 S.Ct. at 589, 21 L.Ed.2d at 643. In the case at bar, the affidavit contains adequate allegations to satisfy *Spinelli*. Relating to the *Draper* method, this affidavit claims the informer saw a specific number of people present using drugs. He saw a "5 yr. old girl who has allready [sic] started smoking marijuana. The informer described the 5 year old taking a drag of marijuana smoke than [sic] holding her hand over her mouth to keep the smoke in."

With reference to the second method, the affidavit alleged that through independent research the police were able to confirm that one of the users referred to by the informer was in fact an independently suspected user, and did in fact reside at the given address. Additionally, the informer's reliability was checked by asking him for information concerning narcotic traffic in the area, then checking that information against police files. This collateral information also proved correct. We therefore hold that this affidavit was sufficient to establish probable cause.

### III.

■■ During the hearing on the motion to suppress, defendant's counsel was permitted to cross-examine Agent Grubb concerning the veracity of allegations in the affidavit. The People objected on the ground that any inquiry into the sufficiency of an affidavit is limited to the "four corners" of the document. It is now well-settled that in reviewing the sufficiency of an affidavit used as the basis for issuing a warrant, the reviewing court may not hear any additional information not before the issuing magistrate in order to support the issuance of the warrant. *Spinelli* at 413, n.3, 89 S.Ct. at 587, 21 L.Ed.2d at 642. *United States v. Roth*, 391 F.2d 507;

*United States v. McDonnell,* 315 F.Supp. 152. But the question here is the converse. We are now concerned with whether the defendant may inquire into the veracity of the allegations made by the officer in order to invalidate the warrant. The People cite *Scarborough v. State,* 3 Md. App. 208, 238 A.2d 297, as answering this question in the negative. We do not find this reasoning persuasive. *Roth, supra; McDonnell, supra.* The exclusionary rule should be applied if, for instance, the trial court became convinced from the cross-examination at the hearing that the police officer who swore out the affidavit did so knowing the allegations therein were false. This would render the affidavit void, as it would the ensuing warrant. A means by which a defendant can begin to call into question the veracity of the affiant is through cross-examination or *voir dire* examination of the affiant. We therefore hold that the trial court was correct in allowing this examination in question.

The rulings are affirmed.