## No. 27778

**J. E. Losavio, Jr., District Attorney for the Tenth Judicial District of the State of Colorado, Legal Advisor of the 1977 Pueblo County Statutory Grand Jury, and the 1977 Pueblo County Statutory Grand Jury v. The Honorable Richard D. Robb, District Judge within and for the Tenth Judicial District of Colorado**

(579 P.2d 1152)

Decided June 12, 1978.

J. E. Losavio, Jr., District Attorney, Warren T. Marshall, Deputy, for petitioners.

Richard D. Robb, District Court Judge, Joe T. Ulibarri, Regional Assistant Attorney General, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This is an original proceeding brought pursuant to C.A.R. 21 by J. E. Losavio, Jr., District Attorney of Pueblo County, and by the 1977 Pueblo County Statutory Grand Jury. Petitioners request this court to vacate respondent trial court's order quashing a grand jury subpoena *duces tecum* and prohibiting the grand jury from investigating possible income tax crimes. We issued our rule to show cause and now discharge the rule.

On May 19, 1978, the Pueblo County Statutory Grand Jury was investigating a number of possible crimes, including state income tax violations. It issued a subpoena *duces tecum* to Roland J. Brumbaugh, Deputy Director of the Colorado Department of Revenue, ordering him to produce Colorado income tax returns for two individuals and six corporations for 1973, 1974 and 1975.

On May 25, the attorney general, on behalf of Brumbaugh, filed a motion to quash the subpoena *duces tecum*. He alleged that section 39-21-113(4)(a), C.R.S. 1973 (1976 Supp.), prohibited the department of revenue from complying with the subpoena. On July 12, following an evidentiary hearing, the respondent trial judge quashed the subpoena *duces tecum* and ordered the district attorney and grand jury to discontinue that part of their investigation relating to possible income tax violations by the named individuals and corporations.

### I.

■ Traditionally, grand juries have the dual functions of determining whether probable cause exists to believe that a crime has been committed and of shielding citizens from unfounded criminal prosecutions.[1] *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561; *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626. Accordingly, as a general rule, the grand jury is given broad investigatory powers and is entitled to subpoena ''all evidence necessary for its deliberations.'' *A v. District Court,* 191 Colo. 10, 550 P.2d 315. *See Gher v. District Court,* 183 Colo. 316, 516 P.2d 643.

■ In Colorado, there is no constitutional guarantee of a grand jury indictment.[2] *Colo. Const.* Art II, Sec. 23 provides that: ''Hereafter a grand

---

[1] The latter function is an important, but often overlooked, one. The United States Supreme Court has stated that the grand jury is to act as "a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569.

[2] Although *Colo. Const.* Art. II, Sec. 8 provides for indictments in felony cases, it specifically allows the legislature to abrogate this requirement by including the words "[u]nless otherwise provided by law." Of course, the Fifth Amendment to the United States Constitution contains a guarantee of a grand jury indictment for certain crimes. Since this guarantee has not been selectively incorporated by the Due Process Clause of the Fourteenth Amendment, it is not applicable to the states. *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232. *See Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (states can completely dispense with grand juries if they choose to do so).

jury shall consist of twelve persons, any nine of whom concurring may find an indictment; provided, *the general assembly may change, regulate or abolish the grand jury system* * * *'' (Emphasis added.) Pursuant to this mandate, the general assembly has enacted a number of statutes regulating the grand jury system. E.g., section 16-5-204, C.R.S. 1973 (1977 Supp.). In addition, this court has exercised its constitutional power to make rules governing practice and procedure in civil and criminal cases[3] to promulgate rules governing grand jury practice. *See* Crim. P. 6-6.9.

One significant limitation upon the grand jury is that it must rely upon the Colorado courts to compel the production of documents or the attendance of witnesses. The grand jury is not given special subpoena powers, but rather is only permitted by Crim. P. 6.1 to subpoena "in accordance with the rules of criminal procedure and these rules." Thus, under Crim. P. 17, the grand jury may issue a subpoena over the signature of the court clerk commanding a person to appear before the grand jury and to produce books, papers, documents, photographs, or other objects. Nonetheless, on motion of the witness subpoenaed, the court is given discretion to quash, modify, or order compliance with the subpoena. Section 16-5-204(4)(i), C.R.S. 1973 (1977 Supp.); Crim. P. 17(c).

There are other important limitations upon the grand jury's power to compel the production of books, papers, and documents. A grand jury may not violate a person's Fifth Amendment privilege against self-incrimination by compelling him to produce books, papers, and documents which would incriminate him. *United States v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L.Ed2d 561.[4] A grand jury may not invade a person's Fourth Amendment rights by attempting to compel production of documents by a subpoena that is so broad that it constitutes an unreasonable search and seizure. *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S. Ct. 494, 90 L.Ed 614; *A v. District Court,* 191 Colo. 10, 550 P.2d 315.[5] Finally, a grand jury may not compel the production of documents that are protected by Colorado testimonial privileges. *Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32. If a grand jury subpoena *duces tecum*

---

[3] This rule-making power is contained in *Colo. Const.* Art. VI, Sec. 21.

[4] The Fifth Amendment to the United States Constitution reads, in part:
"[N]or shall any person * * * be compelled, in any criminal case, to be a witness against himself * * * "

[5] The Fourth Amendment to the United States Constitution reads, in part:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated * * * "

does invade a constitutional right or a testimonial privilege, the court may quash it.[6]

Once the trial court has determined that the grand jury is not interfering with constitutional rights or statutory privileges, it must decide whether to order compliance with the subpoena *duces tecum.* The general assembly has recently enacted legislation guiding the trial court in making this decision. The pertinent section provides:

"(i)   No person subpoenaed to testify or to produce books, papers, documents, or other objects in any proceeding before any grand jury shall be required to testify or to produce such objects, or be confined as provided in this section, for his failure to so testify or produce such objects, if upon filing a motion and, upon an evidentiary hearing before the court which issued such subpoena or a court having jurisdiction under this section, the court finds that:

"(I)   A primary purpose or effect of requiring such person to so testify or to produce such objects before the grand jury is or will be to secure testimony for trial for which the defendant has already been charged by information, indictment, or criminal complaint;

"(II)   *Compliance with a subpoena would be unreasonable or oppressive:*

"(III)   A primary purpose of the issuance of the subpoena is to harass the witness;

(IV)   The witness has already been confined, imprisoned, or fined under this section for his refusal to testify before any grand jury investigating the same transaction, set of transactions, event, or events; or

"(V)   The witness has not been advised of his rights as specified in paragraph (a) of this subsection (4)." (Emphasis added.) Section 16-5-204(4)(i), C.R.S. 1973 (1977 Supp.).

In many situations, we anticipate that the court's decision on whether to order compliance with the subpoena *duces tecum* will be based on the subsection (i) (II) test of whether compliance would be "unreasonable or oppressive." The court must balance the competing interests of the individual's right to keep his personal affairs confidential with the grand jury's right to investigate criminal activity. *Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32. The trial judge is in the best position to weigh these competing interests on a case-by-case basis. Of course, this discretionary authority is not absolute.

---

[6] It should also be noted that a grand jury may not investigate criminal activity which is beyond its sphere of authority. *See Gher v. District Court,* 183 Colo. 316, 516 P.2d 643. In the instant case, it is alleged by respondent that the district attorney and the grand jury have no authority to investigate income tax crimes. Assuming, *arguendo,* that we held that the grand jury may not investigate or prosecute income tax crimes, the grand jury insists that the tax returns are still necessary for its investigation of other crimes. Thus, we need not decide whether a district attorney may investigate and prosecute income tax crimes because such a resolution would not necessarily determine the validity of the subpoena *duces tecum.*

## II.

In the present case, the grand jury issued a subpoena *duces tecum* to the Deputy Director of the Department of Revenue for certain state income tax returns for two individuals and six corporations. The attorney general, on behalf of the Deputy Director, moved to quash the grand jury's subpoena on the ground that he was prohibited by statute from disclosing this material. The section the attorney general relied on reads as follows:

"Reports and returns. (4)(a) *Except in accordance with judicial order or as otherwise provided by law,* the executive director of the department of revenue and his agents, clerks, and employees *shall not divulge or make known in any way* any information obtained from any investigation conducted by the department or its agents or disclosed in any document, report, or return filed in connection with any of the taxes covered by this article. The officials charged with the custody of such documents, reports, investigations, and returns *shall not be required to produce any of them* or evidence of anything contained in them in any action or proceeding in any court, except on behalf of the executive director in an action or proceeding under the provisions of any such taxing statutes to which the department of revenue is a party or on behalf of any party to any action or proceeding under the provisions of such taxing statutes when the report of facts shown thereby is directly involved in such action or proceeding, in either of which events the court may require the production of, and may admit in evidence, so much of said reports or of the facts shown thereby as are pertinent to the action or proceeding and no more." (Emphasis added.) Section 39-21-113(4)(a), C.R.S. 1973 (1976 Supp.).

The general assembly has, by this statute, expressed a strong public policy of protecting the confidentiality of taxpayers' state income tax returns. In fact, a person who makes disclosures in violation of this section is subject to criminal penalties under section 39-21-113(6), C.R.S. 1973.

Nonetheless, a trial court does have the power to order disclosure of these income tax returns for use by a grand jury. Section 39-21-113(4)(a) specifically permits disclosure "in accordance with judicial order or as otherwise provided by law." Here, the trial court found that the mere issuance of a grand jury subpoena *duces tecum* over the signature of the court clerk is *not* a "judicial order" or "as otherwise provided by law." We agree with this conclusion. We also conclude that, if a grand jury issues a subpoena *duces tecum* and the trial court orders compliance after an evidentiary hearing, then the Director of the Department of Revenue must produce the tax returns in question. Since the grand jury is itself a secret body, disclosure to the grand jury is only a limited abrogation of the taxpayers' expectation of privacy. *See* Crim. P. 6.2.

Before analyzing the district court's decision to quash the subpoena, it is important to recognize what this case does not involve. It

does not involve the taxpayers' Fifth Amendment privilege against self-incrimination. The Fifth Amendment privilege may not be claimed by business entities and is thus not available to the six corporations in question. In addition, the United States Supreme Court has recently held that financial disclosures made by individuals on income tax returns are not compelled incriminations. *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370. An individual who does not claim the Fifth Amendment privilege in response to specific questions on the income tax forms waives all right to assert it. In this case, assuming that the two individuals did not specifically claim their Fifth Amendment privileges on the filed income tax returns, their rights have been waived.

This case also does not present a Fourth Amendment violation or a testimonial privilege claim. The Fourth Amendment's prohibition against unreasonable searches and seizures does not protect documents already in the public domain, such as income tax returns. *See A v. District Court,* 191 Colo. 10, 550 P.2d 315. In addition, there is no Colorado testimonial privilege protecting against the disclosure of financial reports made to the Department of Revenue comparable to the privileges for certain confidential communications made to lawyers, physicians, public accountants, and other parties set forth in section 13-90-107(1), C.R.S. 1973 (1976 Supp.). The above-quoted statute on reports and income tax returns (section 39-21-113(4)(a), C.R.S. 1973 (1976 Supp.)), which regulates the disclosure of income tax returns by the Department of Revenue, does not grant a testimonial privilege because it *allows disclosure* "in accordance with judicial order or as otherwise provided by law."

Thus, since the grand jury's subpoena *duces tecum* does not invade any constitutional rights or testimonial privileges, the precise issue before us is whether the trial court abused its discretion in quashing the subpoena for being "unreasonable and oppressive." The court correctly recognized that the general assembly has expressed a strong public policy in section 39-21-113(4)(a) in favor of preserving the confidentiality of state income tax returns. Although this policy of confidentiality does not amount to a testimonial privilege, it should carry great weight in deciding whether a subpoena *duces tecum* is unreasonable or oppressive.

We hold that in the face of this important public policy the party seeking the income tax return, in this case the grand jury, bears the burden to show a compelling need for it. Absent a compelling need, the subpoena *duces tecum* should be quashed.[7]

---

[7] In special situations, courts have required that parties or grand juries make greater demonstrations of need for subpoenaed documents than would normally be necessary. For example, in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed2d 1039, the Court held that confidential presidential communications are presumptively privileged, and that the Special Prosecutor and grand jury must demonstrate that this material is essential to the justice of a pending criminal case in order to subpoena it.

■ In light of the foregoing principles, we find that the petitioners have not demonstrated a compelling need for these income tax returns. Thus, the respondent judge, after a hearing, properly exercised his discretion and quashed the grand jury's subpoena *duces tecum*.

## III.

■ The district court also included in its order a directive that: "The District Attorney and the 1977 Pueblo County Grand Jury shall discontinue their investigation of possible violations relating to Colorado Statutes dealing with Income Tax * * * " This issue was not before the court and was not raised by the motion to quash the subpoena *duces tecum,* and we direct that this portion be stricken from the order.

The rule is discharged.