PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Barnum Lee VARRIEUR,
Defendant–Appellee.

No. 88SA400.

Supreme Court of Colorado,
En Banc.

April 24, 1989.

Stephen K. ErkenBrack, Dist. Atty., Stephen L. Laiche, John J. Fuerst, III, Deputy Dist. Attys., Grand Junction, for plaintiff-appellant.

Justin Dean Kirk, Grand Junction, for defendant-appellee.

VOLLACK, Justice.

The Mesa County District Court suppressed evidence of heroin seized from the pocket of Barnum Lee Varrieur (Varrieur or defendant)[1] pursuant to a search warrant. The district court concluded that the search warrant was not supported by probable cause because the information provided by a confidential informant was not supported by independent evidence corroborating the informant's statements. The prosecution through interlocutory appeal argues that the district court in suppressing the evidence failed to comply with the standards set by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this court in *People v. Pannebaker*, 714 P.2d 904 (Colo.1986). We agree and reverse the suppression order.

I.

The following events are based on information contained in the affidavit supporting the search warrant in question. In the spring of 1988, the Mesa County Narcotics

---

1. The defendant was also known as Lee Vincent Barnum and as Butch Varrieur.

Enforcement Team (narcotics team) was operating in Grand Junction by conducting "controlled purchases" of illegal drugs through the use of confidential informants. An informant told a member of the narcotics team in March 1988 that he had just purchased heroin from Barnum Lee Varrieur. The informant told the narcotics team that Varrieur said he "sold heroin regularly in the Grand Junction area and received his supply of the narcotic from Denver, where he would go pick it up whenever necessary." Varrieur told the informant that that was the last heroin he had, and said that he "would have to go to the Denver area to obtain more of the drug." A field test revealed the substance purchased by the informant to be heroin.

On May 9, 1988, a second confidential informant[2] told a Mesa County sheriff that Varrieur had flown to Denver that day to obtain heroin and was returning that night at 9:48 P.M. on Continental Airlines Flight 1168. This information was relayed to Steven R. Stogsdill, a Mesa County deputy sheriff, who is the affiant in this case. Stogsdill then called Continental Airlines and learned that Varrieur had indeed purchased a round-trip ticket to Denver that day and was scheduled to return to Grand Junction that night on Continental Airlines Flight 1168. After realizing from his training in drug enforcement that drug traffickers often use "quick turnaround flights" to purchase and transport drugs, Stogsdill spoke with a member of the narcotics team, who said that the confidential informant "had supplied him with information on four prior occasions within the last year" and said that his "information had been confirmed as reliable on each of these other occasions."

Stogsdill described Varrieur and sought a warrant to search him and his luggage at the airport for heroin and other evidence of his involvement in the sale, distribution, or possession of heroin. The search warrant was signed that day by Mesa County District Court Judge David A. Bottger.

Members of the narcotics team detained Varrieur that night as he disembarked from the plane. He was searched, and one and one-half grams of heroin were found in his shirt pocket. He was subsequently charged with possession of heroin in violation of section 18–18–105, 8B C.R.S. (1986).

Varrieur moved to suppress the heroin on the ground that the information provided by the first informant was stale because it occurred almost two months before the arrest and on the ground that the affidavit failed to provide a basis for the second informant's belief that Varrieur was going to Denver to buy drugs.

The district court held that the information provided by the first informant was not stale. The district court found the information was significant "to determine the kind of activity that Mr. Varrieur has engaged in the past[,] shedding, therefore, credibility possibly on the new information that was obtained on May 9, 1988 from another confidential informant."

The district court found, however, that the affidavit lacked "any indication as to where the information came from from [sic] the [second] informant, and any indication that it was not something that he had just thought of in terms of the important fact of Mr. Varrieur obtaining the heroin." As a result, the district court concluded from the totality of the circumstances that the search warrant was not supported by probable cause and granted the motion to suppress the heroin.[3]

## II.

■ The fourth amendment to the United States Constitution and section 7 of arti-

---

2. It is unclear from the record whether the first and second confidential informant were in fact the same person.

3. The district court stated:
   Because of [the lack of indication in the affidavit of the second informant's basis for believing Mr. Varrieur was flying to Denver to buy drugs on May 9], I find that the affidavit does not set forth facts for the—for a de-

tached magistrate to look at the information and examine the affidavit and determine if there is sufficient evidence when considering the totality of the circumstances described in the affidavit to justify a police officer making an—or justify a warrant being issued to permit a search of the person and luggage of Mr. Varrieur.

cle II of the Colorado Constitution provide that no search warrant shall issue without probable cause to believe that contraband or material evidence of criminal activity is located in the place to be searched. *See* § 16–3–303, 8A C.R.S. (1986); *People v. Hill*, 690 P.2d 856, 859 (Colo.1984); *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982). In determining whether a search warrant is supported by probable cause, the issuing magistrate may look only at facts contained within the four corners of the affidavit. *People v. Donahue*, 750 P.2d 921, 923 (Colo.1988); *People v. Atley*, 727 P.2d 376, 377–78 (Colo.1986). The task of the issuing magistrate "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986). Probable cause is measured in terms of reasonableness and not mathematical certainty, *People v. Hearty*, 644 P.2d 302, 310 (Colo.1982), and depends on "knowledge grounded in the practical considerations of everyday life on which reasonable and prudent persons act," *Hill*, 690 P.2d at 859.

■ Whether facts in an affidavit provided by a confidential informant establish probable cause for a search warrant depends not on a rigid set of legal rules but on a practical, nontechnical "totality of the circumstances" approach that considers an informant's veracity, reliability, and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1982); *Pannebaker*, 714 P.2d at 907. In rejecting as overly rigid the "two-pronged test" of information provided by a confidential informant created by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court stated that what had previously been treated as largely independent prongs of "veracity" or "reliability" on one hand and "basis of knowledge" on the other

are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Gates*, 462 U.S. at 233, 103 S.Ct. at 2329 (citing *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971)).

Moreover, police officers should be encouraged to seek a warrant before performing a search, and cases raising doubts concerning probable cause should be resolved in accordance with this preference for warrants. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Hill*, 690 P.2d at 859; *People v. Lindholm*, 197 Colo. 270, 591 P.2d 1032 (1979); *People v. Whisenhunt*, 173 Colo. 109, 476 P.2d 997 (1970). Resolving doubts in favor of the magistrate's determination of probable cause serves to avoid giving police an incentive to resort to warrantless searches in the hope of relying on consent or some other exception to the warrant requirement that might develop at the time of the search. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331.

■ Applying these principles to this case, we conclude that the affidavit alleged facts sufficient for a person of reasonable caution to believe that contraband or material evidence of criminal activity was to be found in the place to be searched. Although a person's seemingly innocent round-trip flight to Denver and back in one day is insufficient to demonstrate probable cause, this fact, when taken together with the person's previous statements to the first informant that he obtains heroin in Denver and that he was almost out of heroin, is sufficient to arouse suspicion in a seasoned law enforcement officer's mind. *See United States v. Sokolow*, —— U.S. ——, ——, 109 S.Ct. 1581, 1590, —— L.Ed. 2d ——, —— (1989) (twenty-eight hour, round-trip turnaround from Honolulu to

Miami, a "source city for illegal drugs," was one factor police could use in deciding whether there was reasonable suspicion to detain defendant); *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13 (seemingly innocent activity can become suspicious in light of another confidential informant's tip); *Draper v. United States*, 358 U.S. 307, 309, 79 S.Ct. 329, 331, 3 L.Ed.2d 327 (1959) (statement by previously reliable informant that defendant had moved to Denver and was selling drugs in the city was pertinent in determining there was probable cause to believe he would have drugs with him when he disembarked from train in Denver).

That the second informant's statement that Varrieur was on the Continental Airlines Flight 1168 was corroborated by the affiant serves to buttress the veracity of the second informant's uncorroborated statement that Varrieur was planning to obtain and transport heroin on the night of May 9, 1988. *See Gates*, 462 at 243, 103 S.Ct. at 2334; *Draper*, 358 U.S. at 313, 79 S.Ct. at 333. That the second informant's information had been confirmed by a member of the narcotics team as reliable on four previous occasions is sufficient to indicate reliability. The deficiency in the second informant's basis of knowledge that Varrieur would return from Denver with heroin is compensated by a strong showing as to reliability as well as independent evidence of reliability of the truth of his present statements.

The district court erred in concluding that a lack of basis in the affidavit for the second informant's belief that Varrieur would return from Denver with heroin was fatal to the validity of the search warrant. Using the totality of the circumstances approach of *Gates* and *Pannebaker*, and resolving doubts in favor of the magistrate's determination, we conclude that the search warrant was supported by probable cause to believe that contraband would be found on the person or in the luggage of Varrieur when he returned from Denver on May 9, 1988.

The suppression order is reversed.