The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Billy QUINTANA and Dawnette Teresa Quintana, Defendants–Appellees.

No. 89SA250.

Supreme Court of Colorado, En Banc.

Feb. 12, 1990.

G.F. Sandstrom, Dist. Atty., James S. Whitmire, Asst. Dist. Atty., and David K. Gardner, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Law Offices of J.E. Losavio, Jr., Doyle T. Johns, Jr., Pueblo, for defendants-appellees.

Chief Justice QUINN delivered the Opinion of the Court.

In this interlocutory appeal,[1] the People challenge the district court's suppression of marihuana plants, drug paraphernalia, and

---

1. This appeal is filed pursuant to C.A.R. 4.1, which authorizes the prosecution to file an in-

terlocutory appeal from a ruling of a district court granting a motion to suppress evidence.

numerous items of evidence seized during a search pursuant to a warrant. The district court ruled that the affidavit supporting the search warrant was not sufficient to establish probable cause for the search. We reverse the suppression ruling.

## I.

The defendants, Billy Quintana and Dawnette Quintana, are charged in the District Court of Pueblo County with possession of eight ounces or more of marihuana, cultivation of marihuana, and conspiracy to cultivate marihuana. The charges stem directly from evidence seized in the course of a search of the defendants' residence and detached garage at 321 Lucille, Avondale, Colorado, on November 11, 1988.

On November 10, 1988, Detective Richard Lancendorfer, who was assigned to the narcotics bureau of the Pueblo Police Department, filed with the Pueblo County Court an affidavit in support of a search warrant, along with numerous attached documents relating to the premises to be searched. The affidavit requested the judge to issue a warrant to search a single family dwelling and a detached garage at 321 Lucille, Avondale, Colorado, for marihuana, implements and other paraphernalia used in the manufacture and production of marihuana, and articles of personal property establishing the identity of persons in control of the premises. The affidavit recited the following facts.

On November 4, 1988, Lancendorfer received a phone call from the anonymous caller, who told the detective that Billy Quintana and his wife, Dawn Quintana, were growing marihuana in a separate room on the south side of a detached garage that was located behind the Quintana home at 321 Lucille in Avondale, Colorado.

The caller stated that the Quintanas were using artificial electric "grow-lights" as a means of supplying light to the marihuana plants and also were irrigating the plants with automatic irrigation through the use of a timer. The informant also told the detective that Billy Quintana had begun to harvest the plants and to sell the marihuana.

After receiving the telephone call, Lancendorfer went to the Pueblo County tax assessor's office on November 8, 1988, and learned that the residence at 321 Lucille was approximately 698 square feet with a detached shed and was owned by a couple residing in Lubbock, Texas. Based on his previous training and experience, Lancendorfer was aware that growing marihuana in an enclosed and covered area, such as a garage or shed, required artificial lighting as well as adequate irrigation. The affidavit recited that the most common sources of artificial lighting for marihuana cultivation are high wattage sodium and metal halide lights which are positioned above the plants, are normally regulated by a timing device in order to produce a uniform product, and result in substantial increases in electrical usage.

Lancendorfer's investigation of marihuana cultivation was reported to the Pueblo Statutory Grand Jury, and a grand jury subpoena *duces tecum* was served on Centel Electric Company for "any and all records pertaining to customer identification and [electric] usage amounts" for the residence at 321 Lucille.[2] The electric utility records were attached to the affidavit. The summarized contents of the records were as follows: the electric service at the residence was in the name of Dawn Quintana from November 5, 1987 through November 1988; the average electric usage per

---

**2.** The affidavit recites that the statutory grand jury for the Tenth Judicial District was notified of Detective Lancendorfer's marihuana investigation on November 9, 1988, and authorized a subpoena *duces tecum* for the Quintanas' utility records from Centel Electric Co. The defendants in their brief argue that their electrical usage records were improperly obtained by the grand jury. We find no merit in this argument. "[A]s a general rule, the grand jury is given broad investigatory powers and is entitled to

subpoena 'all evidence necessary for its deliberations'". *Losavio, Jr. v. Robb,* 195 Colo. 533, 536, 579 P.2d 1152, 1154 (1978) (quoting *A. v. Dist. Court,* 191 Colo. 10, 16, 550 P.2d 315, 320 (1976). Crim.P. 6.1 authorizes the issuance of a grand jury subpoena *duces tecum* in accordance with Crim.P. 17, which expressly empowers a prosecuting attorney to "compel the attendance of witnesses and the production of tangible evidence by service upon them of a subpoena to appear for examination."

month from November 5, 1987 through August 5, 1988 was 622 kilowatt-hours; from August 5 to September 7, 1988, the electric usage rose to 1,675 kilowatt-hours; from September 7 to October 5, 1988, the electric usage was 1,333 kilowatt-hours; and from October 5 to November 3, 1988, the usage was 1,011 kilowatt-hours. A supervisor at Centel Electric Company informed Lancendorfer that the average electric usage for a residence the size of 321 Lucille, assuming a family of four, would be between 400 and 600 kilowatt-hours. A Centel Electric Company employee also informed Lancendorfer that no "customer initiated investigation" had been filed regarding the increased electric usage at 321 Lucille. Lancendorfer's affidavit further stated that on three separate occasions from May 1987 to May 1988 he executed three search warrants for various residences in Pueblo and that in each instance marihuana was cultivated inside the residences by artificial lighting with halide lights. This artificial lighting, as shown in the electric utility records for two of the residences, consumed an abnormally high amount of electricity.

The affidavit further described how Lancendorfer, after receiving the anonymous telephone call, drove to the residence at 321 Lucille, observed a detached garage, with locked doors, located behind and to the north of the residence and saw an unidentified male working on a blue Ford pickup truck that was parked in front of the residence. Lancendorfer determined that the license plate on the pickup was registered to Billy Quintana of 321 Lucille, Avondale, Colorado.

The county judge issued a search warrant on November 10, 1988. Detective Lancendorfer and other Pueblo police officers executed the search warrant on the same day and seized marihuana plants, electric lighting equipment, an electric heater, an electric timer and transformer, assorted marihuana cultivation paraphernalia, and several documents relating to the Quintanas' interest in the premises. The defendants moved to suppress the evidence seized on the grounds that the affidavit supporting the search warrant was insufficient on its face to support a finding of probable cause.

After hearing legal arguments on the sufficiency of the affidavit, the district court suppressed the evidence. Relying principally on the "totality of circumstances" test adopted in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the court ruled in pertinent part as follows:

Considering the totality of the circumstances and the requirement that doubts be resolved in favor of the issuing Judge's determination that the affidavit was sufficient, this Court nevertheless concludes that the affidavit was not sufficient to support probable cause to believe that contraband would be found at 321 Lucille, Avondale, Colorado. The source of the anonymous caller's information is unknown, and when he obtained the information is unknown. However, the information would not appear to be stale, because electricity usage remained high at least until November 3, 1988, one week before the search warrant was issued. The affidavit is deficient in the amount of detail provided by the anonymous caller, which was corroborated by independent investigation by the affiant-police officer, especially when compared to the amount of information supplied in the *Pannebaker* case [*People v. Pannebaker*, 714 P.2d 904 (Colo.1986)]. Lastly, unlike the *Varrieur* case, [*People v. Varrieur*, 771 P.2d 895 (Colo.1989)], this anonymous caller had supplied no prior information, which had been confirmed as reliable.

II.

The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibits the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched or the objects to be seized. The probable-cause standard seeks not only "to safeguard citizens from rash and unreasonable interference with privacy," but also attempts "to give fair leeway

for enforcing the law in the community's protection." *People v. Hearty,* 644 P.2d 302, 309 (Colo.1982) (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *Hearty,* 644 P.2d at 309–10.

For some time this court followed the two-pronged test developed by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in determining whether an affidavit based on information provided by an anonymous informant established probable cause for the issuance of a search warrant. *E.g., People v. Conwell,* 649 P.2d 1099 (Colo. 1982); *People v. Peschong,* 181 Colo. 29, 506 P.2d 1232 (1973); *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971); *People v. MacDonald,* 173 Colo. 470, 480 P.2d 555 (1971). The two-pronged test of *Aguilar–Spinelli* required a court to resolve the issue of probable cause by answering the following two questions: first, whether the affidavit contained sufficient facts from which the judge could determine independently whether the informant had an adequate basis in knowledge for his allegation that evidence of criminal activity will be found at the place to be searched; and second, whether the affidavit contained sufficient information to enable the judge to determine whether the informant is credible or his information is reliable. *Spinelli,* 393 U.S. at 412–13, 89 S.Ct. at 586–87; *Aguilar,* 378 U.S. at 114–15, 84 S.Ct. at 1514; *People v. Dailey,* 639 P.2d 1068, 1072 (Colo.1982).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the *Aguilar–Spinelli* two-pronged test and adopted in its place the totality-of-the-circumstances test, offering the following observations in support of its decision:

[T]he "two-pronged test" directs analysis into two largely independent channels—the informant's "veracity" or "reliability" and his "basis of knowledge".... There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

\* \* \* \* \* \*

Reflecting [the] preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.... We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable-cause determinations of magistrates than is the two-pronged test.

\* \* \* \* \* \*

[W]e conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations.

\* \* \* \* \* \*

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place, and the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... concluding" that probable cause existed....

We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*

462 U.S. at 233, 236–38, 103 S.Ct. at 2329, 2331–32 (citations omitted).[3]

■ Under the *Gates* totality-of-the-circumstances test, the fact that the affidavit reciting an informant's account of criminal activities does not establish the informant's basis of knowledge is not fatal to the probable-cause determination, so long as the informant's statement is sufficiently detailed to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities which he reported to the police. *See Gates,* 462 U.S. at 245, 103 S.Ct. at 2335; 1 W. LaFave, *Search and Seizure,* § 3.3(e), at 674 (1987). In addition, greater significance is accorded to police corroboration under the *Gates* test than under the *Aguilar–Spinelli* standards. The court in *Gates,* for example, acknowledged that police corroboration of some of the facts, while arguably not adequate to satisfy the "veracity prong" of *Spinelli,* nonetheless can contribute to probable cause by reducing " 'the chances of a reckless or prevaricating tale,' " and, if the corroboration is sufficiently extensive, can provide " 'a substantial basis' " for crediting the hearsay statement of the informant. *Gates,* 462 U.S. at 244–45, 103 S.Ct. at 2335 (quoting *Jones v. United States,* 362 U.S. 257, 269, 271, 80 S.Ct. 725, 735, 736, 4 L.Ed.2d 697

(1960)). Thus, under *Gates,* even if an affidavit does not establish the basis for the informant's knowledge of the reported criminal activity or the veracity of the reported information, police corroboration of those parts of the information that obviously relate to and describe criminal activities may properly be considered in the probable-cause determination.

Although we are required to follow the decisions of the United States Supreme Court in resolving search and seizure claims under the United States Constitution, we are not bound by such decisions in interpreting article II, section 7 of the Colorado Constitution. We, however, previously have elected to adopt the totality-of-the-circumstances test formulated in *Gates* in construing the search and seizure clause of the Colorado Constitution. *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986); *accord People v. Varrieur,* 771 P.2d 895 (Colo.1989). Accordingly, the inquiry in this case is whether the totality of facts alleged in the affidavit established reasonable grounds to believe that marihuana and other evidence of illegal drug activities would be found at the premises to be searched. It is to that question we now turn.

### III.

We acknowledge, as did the district court in its ruling, that the Lancendorfer affidavit does not contain the same degree of detail as was present in the affidavits analyzed in *People v. Pannebaker,* 714 P.2d 904, and *People v. Varrieur,* 771 P.2d 895. We do not view these differences, however,

---

**3.** The facts of *Gates* illustrate the significance of the totality-of-the-circumstances test for probable cause determinations. In *Gates,* the Bloomingdale, Illinois, police department received an anonymous letter stating that Sue and Lance Gates "make their living on selling drugs" and presently "have over $100,000 worth of drugs in their basement" and "[m]ost of their buys are done in Florida." *Gates,* 462 U.S. at 225, 103 S.Ct. at 2325. The letter further stated that their method of purchase was for the wife to drive their car to Florida and leave the car to be "loaded up with drugs, then Lance flies down and drives it back," and that "the wife is driving down to Florida on May 3 and Lance will be flying down in a few days to drive [the car] back," at which time the trunk of the car will be loaded with over $100,000 in drugs. The police

confirmed that Lance Gates had a reservation to fly to West Palm Beach on May 5, and police surveillance established that he made the flight, took a cab to a motel and entered a room registered in his wife's name, and the next morning departed in the family car with a woman and drove on an interstate highway used by travelers to Chicago. A search warrant for the Gates' car and house was issued upon an affidavit reciting the above facts, and the police successfully executed the warrant. The trial court suppressed the evidence, and the Illinois Supreme Court affirmed the suppression ruling because the affidavit failed to satisfy the "basis of knowledge" and "veracity or reliability" prongs of *Aguilar–Spinelli.* The United States Supreme Court reversed, rejecting the *Aguilar–Spinelli* test for reasons stated in the text.

as fatal to the existence of probable cause under the totality-of-the-circumstances test of *Gates*. Both *Pannebaker* and *Varrieur* applied the totality-of-the-circumstances test to the specific allegations of the affidavits under consideration in those cases, and neither decision was intended as a benchmark requirement for affidavits containing an informant's disclosures.[4] The fact-specific nature of the totality-of-the-circumstances analysis refutes any such reading of those cases.

■ We are satisfied that the affidavit in this case, when analyzed under the totality-of-the-circumstances test and read "in a common sense and realistic fashion," *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965); *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982), establishes probable cause to search the premises at 321 Lucille, Avondale, Colorado. Although the affidavit does not contain a direct statement establishing the source of the informant's knowledge with respect to the marihuana cultivation at 321 Lucille, it does contain a detailed description of the manner in which that illegal activity was being carried out. According to the affidavit, the informant stated that the marihuana was grown in a separate room at the south end of a detached garage, which was located behind the Quintanas' house at 321 Lucille, Avondale, Colorado, and that the Quintanas were using artificial "grow-lights" to supply light to the marihuana plants and were also using a timing device to irrigate the plants. Such detail reasonably suggests that the informant had access to reliable information about the illegal activities which he reported.

Under the totality-of-the-circumstances test, the specific disclosures of the informant must be weighed along with all other allegations in the affidavit to determine whether there is a substantial basis for crediting the informant's statements. The affidavit contains a lengthy recital of investigative police work which corroborates much of the information supplied by the informant. Specifically, the affidavit establishes that Detective Lancendorfer was able to verify that the residence at 321 Lucille was occupied by Billy and Dawn Quintana, as reported by the informant, that there was a detached garage or shed behind and to the north of the residence, as also told to the detective by the informant, and that a vehicle parked in front of the residence was registered to Billy Quintana at 321 Lucille. Detective Lancendorfer also determined by independent investigation, as described in the affidavit, that during the preceding three months the electrical usage at 321 Lucille had exceeded by two and three times the usage during the preceding nine months and that no utility customer had initiated an investigation to

4. In *Pannebaker*, 714 P.2d 904, a police detective's affidavit alleged that an informant told him that John Pannebaker was growing marihuana in two specifically described residences in Boulder County. The informant stated that he had been in both residences within the "recent past" and observed marihuana plants in growing rooms lit with special lights, one of the growing rooms being on the second floor in one residence and in the attic in the other. The informant also related to the police that all windows on the second floor growing room were covered with dark window coverings in order to keep the room warm and to prevent anyone from looking inside. The affidavit also stated that the officer drove to one residence, determined that Pannebaker's name was on a mailbox which contained unopened mail addressed to Pannebaker, and observed that the windows of this residence were covered with black plastic and reflector covering. The officer, according to the affidavit, confirmed the fact that the "recent past" to which the informant referred was within the preceding thirty days. A county judge issued search warrants for the two residences, and police officers seized numerous marihuana plants and other evidence of a marihuana growing operation. The trial court suppressed the evidence seized from both residences under the two-pronged test of *Aguilar–Spinelli*. In reversing the suppression ruling, we remarked that under *Gates* the elements relating to the informant's basis of knowledge and reliability, as well as the informant's veracity, "should be understood simply as closely intertwined issues that may usually illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." 714 P.2d at 907. Although the *Pannebaker* affidavit contained a specific allegation establishing the informant's basis of knowledge, our finding of probable cause was predicated primarily upon the informant's detailed description of the illegal activities and the independent corroboration resulting from the police investigation of the premises.

determine the source of this dramatic increase.[5] Detective Lancendorfer's verification of the detailed description of dramatic increases in the Quintana's electric usage during the preceding three months lends credit to the informant's statement that the Quintanas were growing marihuana plants inside the detached garage on the premises through the use of electrical "grow-lights."

The Supreme Court's observation on the affidavit under consideration in *Gates* applies with equal force here. Although the affidavit "may well not be the type of 'reliability' or 'veracity' necessary to satisfy some views of the 'veracity prong' of *Spinelli*," we are satisfied that it does suffice "for the practical, common-sense judgment called for in making a probable-cause determination." *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335. We thus conclude that the affidavit in this case, when analyzed under the totality-of-the-circumstances test of *Gates*, establishes probable cause for the issuance of a search warrant.

We reverse the suppression ruling and remand the case to the district court for further proceedings.

LOHR, J., specially concurs, and ERICKSON, J., joins in the special concurrence.

Justice LOHR specially concurring:

I agree with the majority that Detective Lancendorfer's affidavit established probable cause when analyzed under the "totality of circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which we adopted for determining probable cause under article II, section 7, of the Colorado Constitution in *People v. Pannebaker*, 714 P.2d 904 (Colo.1986). I write separately to emphasize the continued importance of the considerations embodied in the *Aguilar–Spinelli* two-prong test. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *see also People v. Pannebaker*, 714 P.2d 904, 908–09 (Colo.1986) (Lohr, J., specially concurring).

The *Aguilar–Spinelli* test required that an affidavit contain sufficient information to allow the judge to determine that the informant had an adequate basis of knowledge for the information reported and that the informant was credible or that the information was reliable. *Spinelli*, 393 U.S. at 412–13, 89 S.Ct. at 586–87. In *Gates*, the Supreme Court abandoned this two-prong approach and held that these two requirements "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233, 103 S.Ct. at 2329.

Although in *Gates* the Supreme Court rejected the rigid basis of knowledge and reliability requirements of *Aguilar–Spinelli*, it stressed that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant." 462 U.S. at 230, 103 S.Ct. at 2328. I concur in the majority's judgment because I believe the detail provided by the informant indicated an adequate basis of knowledge and the electric usage records strongly tended to confirm the informant's report of the use of high-energy "grow-lights" and thereby provided sufficient indicia of the informant's reliability.

ERICKSON, J., joins in this special concurrence.

---

**5.** Detective Lancendorfer's corroboration of the Quintanas' electric usage during the three months preceding the informant's report, along with the informant's statement that Billy Quintana has "currently" begun to harvest and sell the marihuana, serves to dispel any notion that the information conveyed by the informant was not timely or fresh. The district court in its ruling expressly acknowledged that, although the informant did not tell Detective Lancendorfer when he obtained his information about the marihuana cultivation at 321 Lucille, the high electric usage up to November 3, one week prior to the search, indicated that the informant's information was not stale.