### No. 28503

## The People of the State of Colorado v. David Dean Lindholm
(591 P.2d 1032)

Decided March 19, 1979.

John F. Healy, District Attorney, W. Terry Ruckriegle, Deputy, for plaintiff-appellant.

Davis, Moorhead & Ceriani, P.C., John B. Moorhead, for defendant-appellee.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

This is an interlocutory appeal, brought by the People under C.A.R. 4.1, to review a ruling of the district court granting the defendant's motion to suppress evidence seized pursuant to a search warrant. The basis for the defendant's challenge was that the evidence was illegally seized in violation of his rights under the Fourth Amendment to the United States Constitution, *U.S. Const.* amend. IV. We reverse the trial court's suppression order.

On May 19, 1978, the Colorado Bureau of Investigation (CBI) was requested to assist the Clear Creek County Sheriff in the investigation of a death in Clear Creek County.

On that same date, Agent Olivares of the CBI began his investigation and determined that a 1976 AMC Pacer automobile had gone front-end-first over a cliff on Fall River Road. The car had burned, and Olivares observed a badly burned human body in the car. Further examination revealed that the gas tank was not ruptured and that a five-gallon gas can was on the front seat with its cap removed. Broken glass and a metal jar lid with a hole punched in it, and a partially burned white cloth wick protruding from the hole were found near the vehicle.

At the top of the embankment over which the car had gone, the investigator found a pair of brown leather work gloves and some matches torn from a matchbook.

On May 21, 1978, the decedent was identified as Debra Jo Lindholm, and the automobile was found to be registered in the names of David D. and Debra J. Lindholm.

Further examination by the CBI revealed that the gloves had traces of gasoline, red paint, blood, human hair and one black dog hair and one light cat hair.

On May 30, 1978, the police interviewed David Lindholm at his residence. He stated that he was a plumber and that a red five-gallon gasoline can was normally kept on the porch. The police observed that the front door of the house was painted red and that Mr. Lindholm owned a black German shepherd dog and a white cat.

On May 31, 1978, the CBI laboratory told the investigating officer that traces of copper and zinc had been found on the gloves and that traces of such metals would be consistent with the use of the gloves in handling copper and galvanized pipe.

On June 2, 1978, a search warrant was issued (not in dispute here) and, during the search, one of the officers observed a knit ski-type hat of red woollike material on the shelf of a closet.

On June 2, 1978, the police served a court order for nontestimonial evidence on Mr. Lindholm, and samples of blood, saliva and hair were obtained under medical supervision.

The evidence seized pursuant to the warrant and court order was submitted to the CBI laboratory, and it was determined that the hair from the glove was not dissimilar with the arm hair sample of Lindholm and the cat hair sample was similar in all characteristics to the cat hair found in the gloves. The laboratory also advised the police that a delustered red acrylic fiber of a type commonly used in clothing, upholstery, floor covering and blankets was also found in the gloves. Based on this information, Agent Gillespie of the CBI requested the county judge to issue a search warrant for "articles of clothing, floor covering, upholstery fabric and blankets

made of red woollike fibers and traces of such fibers." On June 28, 1978, pursuant to that search warrant, various articles were seized from the defendant's house, including the subject of this motion to suppress: exhibit 114a, a child's sweater-dress.

The trial court, after hearing on a motion to suppress evidence, concluded that it was bound by the four corners of the affidavit in considering the question of probable cause and gave no consideration to testimony given at the hearing. The order to suppress was based on the court's conclusion that "(1) The so-called probable cause upon which it was based must fail; and (2) If probable cause existed for the search of a hat, that probable cause could not justify a General Warrant."

Crim. P. 41(b)(6) provides that a search warrant may issue to search for and seize property which would be material evidence in a criminal prosecution. However, Crim. P. 41(c)(IV) dictates that such a search warrant shall issue only upon an affidavit relating, *inter alia,* facts sufficient to establish probable cause that the property to be seized is located at the place to be searched.

It is well-settled law that the affidavit must set forth the underlying facts necessary to enable the issuing magistrate to make an independent judgment of probable cause. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Hearsay contained in that document may be considered, *People v. Johnson,* 192 Colo. 483, 560 P.2d 465 (1977), but the determination of probable cause must be made from the four corners of the affidavit. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971).

The finding of probable cause is a determination which requires the application of both reason and common sense to the facts presented in the affidavit. In *Brethauer, supra,* we noted that:
"In dealing with probable cause, one deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

The finding of probable cause that an object to be seized is located in the place to be searched is not restricted to those items actually seen by the affiant. *People v. McGill,* 187 Colo. 65, 528 P.2d 386 (1974). The magistrate may draw reasonable inferences and may utilize his common sense in making the determination of probable cause.

In *People v. Whisenhunt,* 173 Colo. 109, 476 P.2d 997 (1970), we quoted the pronouncement of the United States Supreme Court in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, (1965), that
"Affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common sense and realistic fashion . . . . A grudging or negative attitude by reviewing courts towards warrants will

tend to discourage police officers from submitting their evidence to a judicial officer before acting."

The same concern was noted in *Aguilar, supra,* in which the court stated that a reviewing court should accept evidence of less persuasive character than that which would justify a police officer acting on his own. The rationale behind this is to encourage law enforcement officials to secure independent judicial scrutiny inherent in obtaining a search warrant. The court also noted in *Aguilar* that deference should be accorded to the issuing magistrate unless he is merely a "rubber stamp" for the investigating officers.

■ The instant case involves the concerns that have been voiced by both this court and United States Supreme Court promoting the encouragement of police investigations which evidence respect for the accused's constitutional rights. Investigations such as this one should not be deterred through a hypertechnical application of the exclusionary rule.[1] The police here conducted their inquiries into the facts of the case with both restraint and judicial scrutiny. They obtained a search warrant or a court order on all three occasions on which they sought to obtain evidence from the defendant or his residence. On the final occasion — the one in issue — the affidavit established that the work gloves contained red acrylic fibers, that the gloves were circumstantially associated with the defendant, and that the affiant had seen one item in the defendant's house which contained red woollike fibers.

From these facts, the county judge could utilize his common sense and reasonably infer that the defendant's residence contained articles with red woollike fibers. As such, his finding of probable cause should not have been rejected by the trial court.

■ The second issue which arises on this appeal is whether the search warrant was so vague as to constitute a general warrant. The United States Supreme Court has promulgated the standard governing this issue in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965): the search warrant must specify the objects to be seized with sufficient particularity so that nothing is left to the discretion of the officer executing the warrant. In *People v. Tucci,* 179 Colo. 373, 500 P.2d 815 (1972), we stated that the concern with general warrants is not the seizure of large quantities per se but rather the indiscriminate search and seizure which invades privacy.

---

[1] In voicing our approval of this type of police investigation, we note the pronouncements of the U.S. Supreme Court that the exclusionary rule should be applied where its remedial objectives will be most efficaciously served. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

■ In determining whether a warrant is too general, the nature of the property to be seized must be considered. *People v. Lamirato,* 180 Colo. 250, 504 P.2d 661 (1972).

■ Applying the above principles to the instant case, we find that the search warrant was sufficiently specific to preclude the indiscriminate exercise of discretion by the officials conducting the search. The only items which could be seized were those articles of clothing, floor covering, upholstery fabric, and blankets containing red woollike fibers. Accordingly, the search warrant was not a general warrant.

The ruling granting the defendant's motion to suppress is reversed.

MR. JUSTICE CARRIGAN does not participate.