The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Thomas TITUS, Defendant–Appellee.

No. 94SA173.

Supreme Court of Colorado,
En Banc.

Sept. 12, 1994.

John Suthers, Dist. Atty., Fourth Judicial Dist., David J. Young, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Dennis J. Sladek, Colorado Springs, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 to challenge a suppression ruling made in the course of a pending criminal case ·in which the defendant, Thomas Titus (Titus), was charged with possession of marijuana with intent to distribute or sell[1] and possession of marijuana.[2] The trial court ruled that the affidavit underlying the warrant to search Titus' residence did not establish probable cause, and suppressed the evidence seized during the search. The District Attorney for the Fourth Judicial District, El Paso and Teller Counties, then filed this interlocutory appeal. We affirm the ruling of the trial court suppressing the evidence and hold that the warrant to search Titus' house was not supported by probable cause.

## I.

In July 1993, the Colorado Springs Police Department received a letter from a first-time anonymous informant alleging that the occupants of 716 Arcadia Place, Colorado Springs, were engaged in selling marijuana. The informant stated that she had observed a large number of visitors to the home, who stayed for short periods of time. The informant included in the letter a list of the license plate numbers of approximately twenty cars belonging to the visitors, and descriptions of the vehicles. Additionally, she stated that on several occasions she had smelled the odor of burning marijuana coming from the residence.

Detective Curtis Richter checked the license plate numbers provided by the informant in a computer data base and found that they matched the descriptions of the vehicles given by the informant. The anonymous informant later provided two more lists of vehicle license plates and descriptions, which Detective Richter also confirmed. He determined that approximately forty-seven differ-

ent vehicles had stopped at the residence in the one-month period between late July 1993 and late August 1993.

On the afternoon of August 22, 1993, Detective Richter sent a police informant to 716 Arcadia Place to try to buy marijuana from the defendant, who happened to be holding a yard sale that day. The police informant was wearing a hidden tape recording device. According to Detective Richter's affidavit to support the warrant, the following conversation took place between the police informant and Titus:[3]

CI [Confidential Informant] asked the male if the property out in front was for sale, specifically a VCR. The male party stated that the VCR was for sale, and CI asked, "Are you Tom?". The male replied, "Yeah", and CI told Tom Titus that he was a friend of "Barb's", which was the first name of a person whose license plate had been seen at Titus' residence by Crime Stopper # 1789E. At that time, Tom Titus stated, "Oh, uh, Mimi".

At that time, CI stated, "I'll buy that (the VCR), and can you get me a quarter?", meaning a quarter ounce of marijuana. Titus stated, "No. . . . don't have any". CI, at that time, asked, "Can I get some later, if I bring Mimi?". Tom Titus stated, "We'll see, if you bring Mimi". CI[ ] and Tom Titus then continued to talk about the VCR, and several seconds later, CI asked again for a quarter ounce of marijuana. Tom Titus told CI, "That's something I won't do ... I've got hard and pat rules about that".

At that time, CI stated, "I'll give you sixty for both, just an eighth (meaning an eighth of an ounce of marijuana[) ]". CI stated further, "I want to get high, man". Tom Titus then stated to CI, "I can't do it ... bring Mimi".

CI continued to talk to Tom Titus about the marijuana, and Titus told CI, "To this date in my life, I've dealt with a very select

1. § 18–18–406(8), 8B C.R.S. (1993 Supp.).

2. § 18–18–406(4), 8B C.R.S. (1993 Supp.).

3. The tape recording was not considered by the judge who suppressed the evidence and is not a

part of this appeal. We rely on Detective Richter's affidavit for a summary of the conversation, but also recognize that the defendant's brief to this court asserts that the affidavit does not accurately relate the conversation that took place between Titus and the informant.

group of people ... I don't need new customers ... so, bring Mimi".

The affidavit also stated that Detective Richter conducted surveillance of the house between August 1 and August 30, stopping three times and remaining between one-half and one hour each time, but saw no activity. On October 11, 1993, Detective Richter spoke again with the anonymous informant, who reported that the number of visitors to 716 Arcadia Place continued unchanged.

The affidavit also reported that Titus is self-employed and operates a telephone repair business out of his home.

Additionally, Titus' attorney stated at the suppression hearing that the anonymous informant has had a "long-standing feud" with Titus.

Detective Richter applied for a warrant to search the residence on October 15, 1993, and a county judge signed the warrant. On October 21, 1993, officers of the Colorado Springs Police Department executed the warrant. They seized approximately two ounces of marijuana (58.1 grams), a triple beam balance, and a box of Ziploc baggies. Titus told police that the marijuana belonged to him and that he purchased approximately four ounces of marijuana each month for personal use.

Titus was charged with possession of marijuana with intent to distribute or sell, and possession of marijuana. The trial judge granted Titus' motion to suppress the evidence on the grounds that sufficient probable cause did not exist to support issuance of the search warrant.

## II.

■ The issue before us is whether the affidavit submitted by Detective Richter contained sufficient information to support a finding of probable cause to issue the search warrant. We do not review the decision of the county judge de novo; rather, it is the task of a reviewing court to determine whether the judge who issued the warrant had a substantial basis for concluding that probable cause existed. *People v. Abeyta,* 795 P.2d 1324, 1327 (Colo.1990).

■ The determination of probable cause must be made from the four corners of the affidavit. *People v. Lindholm,* 197 Colo. 270, 273, 591 P.2d 1032, 1034 (1979); *People v. Brethauer,* 174 Colo. 29, 39, 482 P.2d 369, 373–74 (1971). Probable cause exists when an affidavit alleges sufficient facts to warrant a person of reasonable caution to believe that evidence of criminal activity is located at the place to be searched. *Abeyta,* 795 P.2d at 1327; *People v. Quintana,* 785 P.2d 934, 937 (Colo.1990). When the information in an affidavit is based on the reports of an informant, a judge considers the "totality of the circumstances" and asks the common-sense practical question of whether, through the eyes of a reasonable police officer, there is probable cause to issue a warrant. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (abandoning formal application of the two-pronged test enunciated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). We adopted the *Gates* totality-of-the-circumstances test in *People v. Pannebaker,* 714 P.2d 904 (Colo.1986).

■ Even if an informant's allegations do not establish probable cause by themselves, it may be possible to obtain a warrant by corroborating the details of the tip through independent police work. *Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34. Police corroboration of significant aspects of an informant's tip is an important factor in the probable-cause calculation, but it is not a constitutionally required, indispensable component. *People v. Paquin,* 811 P.2d 394, 398 (Colo.1991). Neither is it necessary that police corroborate evidence relating directly to illegal—as opposed to innocent—conduct alleged by the informant. *People v. Turcotte–Schaeffer,* 843 P.2d 658, 660–61 (Colo.1993). Under the totality-of-the-circumstances test, it is possible to establish probable cause solely through corroboration of non-criminal activity. *Id.*

## III.

■ Based on the four corners of the affidavit and the totality of the circumstances, we agree with the trial judge that the infor-

mation contained in the affidavit was not sufficient to establish that probable cause existed to support the issuance of a search warrant for Titus' residence.

## A.

We begin by recognizing that the police had no indication, apart from the anonymous informant's suspicions and the police informant's conversation with Titus, that Titus was engaged in criminal activity. Unlike *Pannebaker* or *Turcotte–Schaeffer*, for example, the anonymous informant in this case did not claim that Titus had ever sold marijuana to her, nor that she had ever seen Titus selling marijuana to anyone. Furthermore, the attempt by the police to manufacture a sale by Titus was unsuccessful. No sale ever took place, and Titus made no agreement to sell marijuana to the police informant posing as a buyer.

CI stated, "I'll buy that (the VCR), and can you get me a quarter?", meaning a quarter ounce of marijuana. Titus stated, "No .... don't have any". CI, at that time, asked, "Can I get some later, if I bring Mimi?". Tom Titus stated, "We'll see, if you bring Mimi". CI[ ] and Tom Titus then continued to talk about the VCR, and several seconds later, CI asked again for a quarter ounce of marijuana. Tom Titus told CI, "That's something I won't do ... I've got hard and pat rules about that".

At that time, CI stated, "I'll give you sixty for both, just an eighth (meaning an eighth of an ounce of marijuana[) ]". CI stated further, "I want to get high, man". Tom Titus then stated to CI, "I can't do it ... bring Mimi".

CI continued to talk to Tom Titus about the marijuana, and Titus told CI, "To this date in my life, I've dealt with a very select group of people ... I don't need new customers ... so, bring Mimi".

Although Titus' remarks create an inference that Titus was engaged in criminal activity, absent anything further than reasonable suspicion, the conversation does not—either by itself or when considered with the other evidence—establish probable cause to support the issuance of a search warrant for Titus' residence. *See United States v. Bark-*

*er,* 623 F.Supp. 823, 843 (D.Colo.1985) (concluding that, although telephone conversations between defendants, as described in an affidavit, clearly supported a finding of probable cause to believe the defendants were involved in drug transactions, the affidavit did not provide probable cause to search a residence when the conversation contained nothing to indicate that contraband or drug-related items would be found at the residence).

## B.

We next consider the high volume of traffic reported by the anonymous informant, and whether it supports a finding of probable cause. According to information supplied by the anonymous informant, people from forty-seven different vehicles visited Titus' house in a one-month period. Several of them had been observed at the house more than once.

■ The fact that a large number of people visit a residence in a one-month period does not establish that illegal activity is taking place. This type of information in affidavits originated during the prohibition era. Today, there must be something more than the mere fact that people are coming and going in order to support the belief that criminal activity is occurring. *See People v. Broilo,* 58 Mich.App. 547, 228 N.W.2d 456 (1975). Such additional evidence may include the observance by police or informants of criminal or other suspicious activity. In a case such as this one, in which Titus reportedly operated a business out of his home, large numbers of visitors would not suggest illegal activity.

Detective Richter stated in his affidavit that he was able to verify that the license plate numbers of the vehicles on the list of the anonymous informant matched the descriptions of the vehicles that she gave him. There is nothing in the affidavit to suggest, however, that any of these vehicles belonged to known drug offenders, or were used in the furtherance of any illegal activity. Although it is not clear from the record, either Detective Richter did not search his computer data base to determine whether the vehicle owners had prior convictions for marijuana of-

fenses, or he did search for this information, and found that Titus' visitors had no prior drug offenses. In the end, Detective Richter's investigation merely confirmed that the vehicles had the correct license plates attached, and no more.

Detective Richter also did not corroborate the informant's assertion that any of the vehicles on the informant's list had ever visited Titus' residence. In fact, during Detective Richter's surveillance of the house, he never saw any visitors at Titus' residence. Even if the informant had merely copied down license plate numbers and vehicle descriptions from autos in a grocery store parking lot, the detective's cursory "investigation" would not have discovered this deceit.

The matching of vehicle license plate numbers with vehicle descriptions was not the kind of "police corroboration" that would serve to establish probable cause in this case. Absent any additional corroboration—for example, that the owners of the vehicles were involved in illegal activity—it was insufficient to support a finding of probable cause.

### C.

The only possible evidence of criminal activity referred to in the affidavit is the anonymous informant's statement that she had "on several occasions ... smelled the odor of burned marijuana coming from the residence." The affidavit does not state the circumstances under which the informant smelled the odor of burned marijuana. Nor does it disclose how many times she smelled it. Most importantly, however, it does not disclose when these olfactory experiences took place. There is no indication that the police officer attempted to determine whether the informant had smelled marijuana burning recently, or whether the event was remote in time.[4]

The affidavit reported that the anonymous informant had told the officer that she was "familiar with the smell of burning marijuana, as [she] had been exposed to marijuana in

the past, through acquaintances." As Titus points out in his brief, however, there is no evidence that the informant is knowledgeable about the identification of smells. He asserts that, even if there was a smell coming from the house, it could have originated from another substance.

Without more, such vague claims of the informant's smelling of burning marijuana "on several occasions" add little to the probable-cause equation. Under no circumstances do they support the conclusion that Titus was *selling* marijuana out of his home. Had the informant seen marijuana being used or participated in a sale, the analysis of whether there was probable cause may have been different. However, those conditions are not present here.

### IV.

The People contend that, even if there was not probable cause to support the issuance of the warrant, the evidence should not be suppressed because of the good-faith exception to the exclusionary rule. The good-faith exception, enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and enacted into law by our legislature in section 16–3–308, 8A C.R.S. (1986), applies when police were acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate or judge, and the warrant is later found to be unsupported by probable cause. The good-faith exception is applicable only when the officer's reliance on the warrant is objectively reasonable. *Leon,* 468 U.S. at 922–23, 104 S.Ct. at 3420–21.

The issue of whether the evidence should be admitted under the good-faith exception to the exclusionary rule was not raised in the trial court, and therefore is not appropriately before us. *See A.O. Smith Harvestore Prods., Inc. v. Kallsen,* 817 P.2d 1038 (Colo. 1991); *Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544 (Colo.1988).

---

4. Titus could have raised, but did not, the issues of stale information in the affidavit or stale probable cause. Although the officer did not apply for the warrant until October 15, he had received the report of the anonymous informant in July,

performed his surveillance in August, and had attempted to stage the sale of marijuana on August 22. We draw no conclusions on the staleness issue.

## V.

The ruling of the trial court suppressing the evidence seized at Titus' residence is affirmed.

SCOTT, J., concurs.

MULLARKEY, J., dissents, and ROVIRA, C.J., and LOHR, J., join in the dissent.

Justice SCOTT concurring:

I join the majority in its opinion and its judgment. I write separately, however, to emphasize that when police inquiry fails to corroborate objective facts alleged by a first-time anonymous informant but, in fact, refutes conclusions of the informant necessary to establish a nexus between the purported illegal activity and a suspect's residence, probable cause does not exist to support the issue of a warrant permitting a governmental intrusion into a home.

### I

The facts are sufficiently set forth in the majority opinion. It is fairly well-established that the existence of probable cause must be made ·from the four corners of the affidavit. *People v. Lindholm,* 197 Colo. 270, 273, 591 P.2d 1032, 1034 (1979). As the reviewing court, we must determine whether, based upon the assertions of fact in the affidavit, there is probable cause to issue a warrant to search Titus' residence. *People v. Pannebaker,* 714 P.2d 904 (Colo.1986) (adopting the totality-of-the-circumstances test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). An "informant's reliability, veracity, and basis of knowledge are still important factors to be considered in determining whether probable cause exists." *People v. Diaz,* 793 P.2d 1181, 1183 (Colo.1990); *People v. Contreras,* 780 P.2d 552, 556 (Colo.1989). When relying upon an anonymous informant, corroboration of factual assertions combined with specific details not easily obtained will support a finding of probable cause. *People v. Leftwich,* 869 P.2d 1260 (Colo.1994). Mere suspicion, falling short of probable cause, is not sufficient without more to support the issue of a warrant. Police corroboration of significant aspects of an informant's assertions of

fact is important in resolving whether or not probable cause to issue a warrant exists. *People v. Turcotte–Schaeffer,* 843 P.2d 658, 660–61 (Colo.1993).

### II

The affidavit of Detective Richter begins and ends our review, confirming the propriety of the trial court's ruling. In his affidavit, Detective Richter stated that "Crime Stopper #1789E believed [the defendant was] selling large amounts of marijuana from [his] home, based on the amount of traffic going to and from the residence, and that most of the traffic going to that address only stayed a short period of time." However, based on his experience and training as a member of the Colorado Springs Police Department Metro Vice/Narcotics Division, Richter was unable to corroborate or confirm the existence of traffic of a sufficient nature to surmise that, in fact, Titus' residence was being used for the sale of drugs. In his affidavit, Richter stated:

> [y]our affiant, between August 1, 1993, and August 30, 1993, did conduct surveillance on the address of 716 Arcadia Place, *three times,* each time for approximately thirty minutes to one hour in the evening. Your affiant *notes that no activity was seen as far as possible marijuana customers going in and out of the residence was concerned.*

Apparently, Richter was unable, on three occasions, to corroborate a very important and presumably verifiable objective fact supporting the conclusions of his first-time informant, i.e., criminal activity evinced by the "amount of traffic . . . to and from the residence." Instead, Richter's efforts to corroborate the unknown informant's assertions substantially nullify and refute any inference of illegal conduct—drug trafficking. This is the only reasonable conclusion that remains when the affidavit is reviewed within its four corners and the various assertions contained therein are taken as a whole.

As a consequence, the affidavit setting forth the informant's assertions as to the nature of the traffic, when weighed against the results of Detective Richter's subsequent police inquiry does not provide a substantial

basis for concluding that there was probable cause to believe that the defendant's residence was being utilized for the sale of "large amounts of marijuana ... based on the amount of traffic."

Moreover, because Crime Stopper #1789E was a first-time informant unknown to Detective Richter, it is impossible to determine the informant's veracity or reliability. However, we do know that the informant has not provided information in the past and, as set forth above, that the assumptions made by the first-time informant were, in fact, refuted in at least one material respect, i.e., that the *nature* of the traffic did not reflect "possible marijuana customers."[1] This past experience deficiency is exacerbated by the fact, clearly set forth in the affidavit of Detective Richter, that on three occasions Richter, trained in detecting drug traffic of the type alleged, saw "no activity [of] possible marijuana customers going in and out of the residence."

In my view, because the nexus between the residence and the suspected illegal activity was in fact refuted, and because of the absence of other more specific detailed information that Titus was engaged in illicit drug trafficking from his home, the affidavit does not support a finding of probable cause. Where information cannot be corroborated and specific details otherwise verifiable are not provided, mere suspicion will not rise to probable cause. *People v. Leftwich,* 869 P.2d 1260 (Colo.1994) (holding that when police can corroborate non-criminal activity and the informant provides details not easily obtained, probable cause will support issuance of a search warrant); *see People v. Pate,* 878 P.2d 685 (Colo.1994) (concluding that information provided by an anonymous informant that is specific and detailed and corroborated

by the police will support finding of probable cause); *People v. McCoy,* 870 P.2d 1231 (Colo.1994) (Scott, J., specially concurring) (positing that while "common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate," probable cause does exist when, in addition, "officers would have seen enough to permit them to believe that [the defendant] was violating or had violated the law") (quoting *Henry v. United States,* 361 U.S. 98, 101–02, 80 S.Ct. 168, 170–71, 4 L.Ed.2d 134 (1959)); *People v. Abeyta,* 795 P.2d 1324 (Colo.1990) (police corroboration of information provided by an anonymous informant regarding criminal activity may support probable cause).

### III

Accordingly, I join the majority and also would affirm the ruling of the trial court suppressing the admission of evidence obtained through a warrant issued without probable cause.

Justice MULLARKEY, dissenting:

I respectfully dissent.

The majority holds that "the information contained in [Detective Richter's] affidavit was not sufficient to establish that probable cause existed to search Titus' residence." Maj. op. at 151. I disagree. In my view, under the totality of the circumstances, the county court had a substantial basis for concluding that probable cause existed in this case. Accordingly, I would reverse the trial court's ruling suppressing evidence seized during the search of the defendant's home.

Detective Richter's affidavit contains several important facts supporting the issuance

---

1. The affidavit, on its face, suggests a basis for the high volume of traffic at Titus' home: "Crime Stopper #1789E told your affiant that they [sic] believe Tom Titus has a telephone repair business which is run from Titus' residence, and that to their [sic] knowledge Titus is not employed anywhere else." The nature of a telephone repair business also explains, perhaps, why the same vehicles would be seen more than once—presumably to both deliver and pick up telephones being repaired. It may also explain why three or four visits are made by some of the same vehicles on occasion. Items being repaired are not always completed when promised, requiring customers to make more than two visits. In his affidavit, Detective Richter did not state that he did not witness traffic. He only averred that there was "no activity [that evinced] possible marijuana customers going in and out." Finally, conspicuously absent from the affidavit is a description of the conduct of persons visiting the residence. Apparently, the first-time informant did not notice whether visitors did or did not carry telephone equipment, which might infer traffic for purposes related or unrelated to the business being conducted in Titus' home.

of a search warrant.[1] First, the affidavit states that a citizen informant, Crime Stopper # 1789E, named the defendant as a suspected dealer in "large amounts of marijuana" from his residence at 716 Arcadia Place. To support this allegation, Crime Stopper # 1789E reported that a high volume of traffic visited the defendant's residence for short periods of time, usually in the evening and on the weekends.[2] In connection with this allegation, Crime Stopper # 1789E provided Detective Richter with the license plate numbers and vehicle descriptions of 47 vehicles which had visited the defendant's residence during a one month period.

Second, the affidavit states that Crime Stopper # 1789E reported having "smelled the odor of burned marijuana" coming from the defendant's house "on several occasions." Crime Stopper # 1789E also told Detective Richter that she[3] was "familiar with the smell of burning marijuana, as [she] had been exposed to marijuana in the past, through acquaintances."

Third, the affidavit describes a conversation between a confidential police informant (the CI) and the defendant on August 22, 1993, during which the CI asked the defendant whether he could purchase from him "a quarter" or "an eighth."[4] After the CI asked, "Can I get some later, if I bring Mimi?" the defendant responded, "We'll see, if you bring Mimi." When the CI again asked for a quarter ounce of marijuana, the defendant stated, "That's something I won't do ... I've got hard and pat rules about that." The CI then told the defendant that

"I want to get high, man," to which the defendant responded, "I can't do it ... bring Mimi." Eventually, after the CI continued to discuss the purchase of marijuana, the defendant stated that "to this date in my life I've dealt with a very select group of people ... I don't need new customers ... so, bring Mimi."

Finally, the affidavit describes the efforts made by Detective Richter to corroborate some of the information reported by Crime Stopper # 1789E. Detective Richter checked the license plate numbers provided by Crime Stopper # 1789E and found that they matched the descriptions of the vehicles given by Crime Stopper # 1789E. He also conducted surveillance on the defendant's residence on three separate occasions, "each time for approximately 30 minutes to one hour, in the early evening," but did not observe any possible marijuana purchasers entering or leaving the premises. Finally, Richter inspected the reports given by Crime Stopper # 1789E and found that many of the vehicles which she identified had gone to the defendant's residence "on an every other day basis."

In my view, the above information adequately supports the county court's decision to issue a search warrant in this case. In arriving at the opposite conclusion, the majority attempts to discredit the information provided in Detective Richter's affidavit. For example, in section III A of its opinion, the majority holds that the conversation between the CI and the defendant regarding the proposed purchase of "a quarter" or "an

---

1. Our analysis is limited to the information contained within the four corners of the affidavit. *People v. Pate,* 878 P.2d 685, 690 (Colo.1994). Thus, the majority's reference to a statement made by counsel for the defendant *at the suppression hearing* (that the citizen informant allegedly had a " 'long-standing feud' with Titus") is misplaced. Maj. op. at 150. The question before us is whether the *issuing judge,* and not the trial judge reviewing the motion to suppress, had a substantial basis for concluding that probable cause existed.

2. According to the affidavit, Crime Stopper # 1789E described this heavy vehicular traffic as "very inconvenient to those living in the immediate area, as 716 Arcadia Place does rest in a cul-de-sac."

3. The majority uses the pronoun "she" to refer to Crime Stopper # 1789E. The only indication in the record as to the gender of Crime Stopper # 1789E are references, made by counsel for the defendant at the suppression hearing, to "this lady" and "her" statements to the police about the defendant. Although counsel for the defendant characterized Crime Stopper # 1789E as female, the informant's identity has not been disclosed in these proceedings (the affidavit uses the plural "they" to refer to the informant). For purposes of consistency, I will also refer to Crime Stopper # 1789E as "she" or "her."

4. The affidavit explains that the terms "a quarter" and "an eighth" refer to a quarter ounce and an eighth ounce of marijuana.

eighth" from the defendant "does not—either by itself or when considered with the other evidence—establish probable cause to support the issuance of a search warrant for Titus' residence." Maj. op. at 151. This is so, according to the majority, because "[n]o sale ever took place, and Titus made no agreement to sell marijuana to the police informant passing as a buyer." *Id.* at 151.

The majority fails to recognize, however, that the conversation between the CI and the defendant provides information highly relevant to the probable cause calculus despite the fact that an actual purchase of marijuana did not occur. The statements made by the defendant to the CI, when read in context, support a reasonable inference that marijuana may be located in the defendant's home. For example, the CI's references to "a quarter," "an eighth" and his statement that he wanted to "get high" clearly indicate that the conversation with the defendant concerned the proposed purchase of marijuana. The only reasonable interpretation of the defendant's remarks is that, should the CI return later with "Mimi," the defendant would then sell him the marijuana he requested. Even the majority concedes that the defendant's statements to the CI "create an inference that Titus was engaged in criminal activity...." *Id.* at 151. Accordingly, such statements by the defendant provide strong support for the issuance of the search warrant.[5]

The majority also attempts to downplay, in part III B of its opinion, Crime Stopper # 1789E's report of a high volume of vehicle traffic for short periods of time at the defendant's residence. *See* maj. op. at 151. In dismissing this information as effectively irrelevant to the probable cause determination, the majority states that "[t]he fact that a large number of people visit a residence in a one-month period does not establish that illegal activity is taking place." *Id.* It further notes that "there must be something more than the mere fact that people are coming and going in order to support the belief that criminal activity is occurring." *Id.* Although I agree that a high volume of vehicle traffic at a residence for short periods of time does not *establish*, by itself, probable cause to search the residence, such an observation is a relevant factor in support of a finding of probable cause. *See, e.g., People v. Abeyta*, 795 P.2d 1324, 1328–29 (Colo.1990) (noting that numerous vehicles were observed making brief stops to enter residence where marijuana dealing was suspected); *People v. Delgado*, 832 P.2d 971, 974 (Colo. App.1991) (observation of "a high volume of short term visitors" at a residence where cocaine dealing was suspected supported probable cause); *see also United States v. Corral*, 970 F.2d 719, 725 (10th Cir.1992) (citing as a relevant factor for purposes of probable cause the "unusually high volume of visitors briefly entering and leaving [the defendant's] residence, consistent with drug trafficking"). The majority seems satisfied that the high volume of short-term traffic at the defendant's residence is entirely innocuous simply because the defendant operated a telephone repair business out of his home. Maj. op. at 151. What the majority fails to mention, however, is that the affidavit clearly indicates that this traffic was observed in the evening hours and on weekends. Although it is possible that some of this evening and weekend traffic was related to the defendant's legitimate business activities, it is equally, if not more, reasonable to infer from the information in the affidavit that such traffic was the product of marijuana trafficking occurring at that residence.

---

**5.** I also question the meaning of footnote three of the majority opinion. In that footnote, the majority states that although the tape recording of the conversation between the CI and the defendant "is not a part of this appeal," it nevertheless "recognize[s] that the defendant's brief to this court asserts that the affidavit does not accurately relate the conversation that took place between Titus and the informant." Maj. op. at 149 n. 3 (emphasis added). It is unclear to me how the majority's legal analysis of this case is affected by its decision to "recognize" the defendant's argument. The question presented in this interlocutory appeal is whether the issuing judge, *based on the information contained in the affidavit,* had a substantial basis for determining that probable cause existed to search the defendant's home. Furthermore, the defendant does not claim that any of the information contained in the affidavit is false; rather, he simply claims that Detective Richter should not have explained in the affidavit that "a quarter" and "an eighth" are common references to quantities of marijuana.

The majority also questions the relevance of Detective Richter's corroboration of the license plate numbers and vehicle descriptions provided by Crime Stopper # 1789E. *See id.* at 151–52. Once again, although I agree with the majority that the "matching of vehicle license plate numbers with vehicle descriptions [is] not the kind of 'police corroboration' that would serve to *establish* probable cause in this case," *id.* at 152 (emphasis added), I disagree with the majority's wholesale dismissal of such efforts by Detective Richter. Independent police corroboration of the existence of the vehicles described by Crime Stopper # 1789E certainly strengthens the veracity of that informant's tip, and, as such, constitutes additional support for the issuance of a search warrant in this case. *See Illinois v. Gates,* 462 U.S. 213, 244–45, 103 S.Ct. 2317, 2335–36, 76 L.Ed.2d 527 (1983) ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale' . . . .").

I also question the reasons provided by the majority to support its conclusion, in part III C of its opinion, that Crime Stopper # 1789E's statement that she smelled burning marijuana coming from the defendant's residence "on several occasions" adds little to the probable cause calculus. *Id.* at 152. For example, the majority cites the defendant's briefs for the proposition that "there is no evidence that [Crime Stopper # 1789E] is knowledgeable about the identification of smells." *Id.* As a factual matter, this statement is misleading because Crime Stopper # 1789E did tell Detective Richter that she was specifically familiar with the odor of burning marijuana based on past exposure. More problematic, however, is the implication here that a citizen informant's first-hand sensory observations add little, if anything, to the probable cause equation unless it has been established that the informant has some formal expertise in the particular area (e.g., in the "identification of smells"). *Id.* Where, as in this case, the odor alleged to have been detected is the distinctive smell of burning marijuana, considerable weight should be given to an informant's statement that he or she recognizes such an odor from

personal experience. *See, e.g., United States v. Nielsen,* 9 F.3d 1487, 1491 (10th Cir.1993) ("The smell of burnt marijuana would lead a person of ordinary caution to believe the passenger compartment might contain marijuana."); *United States v. DeLeon,* 979 F.2d 761, 764–65 (9th Cir.1992) (distinguishing between the distinctive odor of *burned* marijuana and the less pungent odor of *planted* marijuana, which requires a trained or experienced person to detect); *United States v. Pond,* 523 F.2d 210, 213 (2d Cir.1975) ("It cannot be disputed that marijuana has a distinctive pungent odor. . . ."), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976); *United States v. Barron,* 472 F.2d 1215, 1217 (9th Cir.1973) (holding that where an agent "familiar with the odor of marijuana" smells such an odor emanating from an automobile, that fact alone is sufficient to establish probable cause to search for marijuana), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973); *People v. Baker,* 813 P.2d 331, 333 (Colo.1991) ("In this case, the officers had probable cause to believe a crime was being committed when they smelled burned marijuana."). Although a more detailed explanation of Crime Stopper # 1789E's experience with the odor of burnt marijuana would have made the tip even stronger, a showing of specific olfactory expertise is not required under the "totality of the circumstances" test. Accordingly, Crime Stopper # 1789E's statements as to the odor of marijuana emanating from the defendant's residence constitute additional support for the issuance of the search warrant.

I am further troubled by the implication in the majority opinion that Crime Stopper # 1789E's claim to have smelled burning marijuana coming from the defendant's residence is somehow less relevant to the probable cause determination simply because it does not "support the conclusion that Titus was *selling* marijuana out of his home." Maj. op. at 152 (emphasis in original). The question presented before the issuing judge in this case was whether the affidavit in support of the warrant alleged "sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity *is located at the*

*place to be searched."* *Pate,* 878 P.2d at 689 (emphasis added); *People v. Arellano,* 791 P.2d 1135, 1137 (Colo.1990). Thus, an informant's claim that a suspect is using marijuana in his residence or is merely storing it there for someone else supports the issuance of a warrant to search the premises, even if such statements do not compel the conclusion that the suspect is actually *selling* marijuana from his home. *See Pate,* 878 P.2d at 692 n. 15.

Finally, although the majority acknowledges that the information in the affidavit must be evaluated under the "totality of the circumstances," maj. op. at 150, it appears to have considered the weight of each relevant fact individually, without considering the impact of the affidavit as a whole. The opinion divides analysis of the affidavit into three separate subsections, with no discussion of whether a judge presented with *all* of the information in the affidavit would have a substantial basis for concluding that probable cause existed to search the defendant's home. The *Gates* Court specifically discouraged such "excessively technical dissection of tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." 462 U.S. at 234–35, 103 S.Ct. at 2330. Although I agree with the majority that none of the individual facts presented in the affidavit, by itself, establishes a substantial basis for the issuance of the warrant, the affidavit viewed as a whole does support the county court's decision.

Accordingly, I respectfully dissent.

ROVIRA, C.J., and LOHR, J., join in this dissent.